**STATEWIDE CONVOY TRANSPORTS, INC., Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS, et al., Appellees.**

**No. 3–87–169–CV.**

Court of Appeals of Texas, Austin.

June 29, 1988.

James M. Doherty, Doherty & Munson, Austin, for appellant.

Jim Mattox, Atty. Gen., Douglas Fraser, Asst. Atty. Gen., Timothy Mashburn, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for appellees.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

Statewide Convoy Transports, Inc. sued the Texas Railroad Commission for judicial review of the agency's final order granting a motor-carrier license to Interstate Adjust-

ers, Inc. The district court refused to reverse the order and Statewide appeals to this Court. We will affirm the judgment below. Texas Motor Carrier Act, Tex.Rev. Civ.Stat.Ann. art. 911b, §§ 5a(c)–(g), 20 (1964 & Supp.1988); Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 19, 20 (Supp.1988).

### THE CONTROVERSY

Interstate applied to the Commission for a license (a certificate of convenience and necessity) to transport "repossessed vehicles," over the public highways between Dallas County and other locations in the State, as a "specialized motor carrier." [1] In its application, Interstate offered two limitations on the proposed license: (1) the license would not authorize the transportation of "mobile homes"; and (2) it would allow carriage of the repossessed vehicles as a "wrecker service only."

Statewide and five other competing carriers appeared in the Commission proceeding to oppose the Interstate application. By agreeing to further limitations upon the proposed license, Interstate procured the withdrawal of opposition by the five "protestants" other than Statewide. The additional limitations were: (1) Interstate's license would not include authority to transport "wrecked or disabled vehicles *other than* repossessed vehicles" (emphasis added), and (2) the equipment employed by Interstate, in its operations under the license, would have "a rating capacity of one ton or less." After the other "protestants" withdrew, Statewide remained the only party opposing Interstate's application in the contested-case proceeding.

The Commission's hearing examiner convened the case for an evidentiary hearing, on April 21, 1983, at which Interstate and Statewide appeared to adduce evidence, test opposing evidence by cross examination, and advance legal argument. On June 24, 1983, the examiner issued a proposal for decision, recommending issuance of the license to Interstate on the terms set out in a suggested final order. The suggested final order included, as restrictions on Interstate's operating authority, the substance of each of the four limitations stated above.

On August 25, 1983, Statewide informed the examiner that it had received notice of the proposal for decision only five days earlier, and that Statewide would file exceptions to the proposal for decision. On August 31, 1983, Statewide did so, contending: (1) the examiner erred generally in recommending approval of the Interstate application, and (2) no evidence supported the examiner's proposed determination that existing service was inadequate in two particulars.[2] Statewide briefed each contention, including in its argument the following passage:

---

1. The Texas Motor Carrier Act, Tex.Rev.Civ.Stat. Ann. art. 911b (1964 & Supp.1988), delegates to the Commission regulatory authority over several categories of motor carriers transporting property, for compensation or hire, over State highways. One such category is denominated "specialized motor carrier," a term defined in § 1(i) of the Act by reference to such carriers' operating characteristics, equipment, permissible cargoes, and other particulars. One aspect of the Commission's regulation is its power to license the operation of such carriers through issuance, on application, of certificates of convenience and necessity. Sections 5a(d) through 5a(g) pertain especially to the licensing of "specialized motor carriers." As discussed at length in *Professional Mobile Home Transport v. Railroad Commission,* 733 S.W.2d 892 (Tex.App. 1987, writ ref'd n.r.e.), § 5a(d) incorporates *other* parts of the Act, not nominally pertinent to the licensing of "specialized motor carriers,"

and makes them applicable to the issuance of licenses to such carriers.

2. In § 5a(d) of the Texas Motor Carrier Act, the Legislature directed the Commission to issue, on application, a certificate of convenience and necessity "unless" it determines in a contested-case proceeding that: (1) the services and facilities of existing carriers, serving the territory or any part thereof, are adequate; or (2) there does not exist a public necessity for such service; or (3) the public convenience will not be promoted by granting the application. These are not the only considerations and determinations the Commission must apply and make in reaching a decision to reject or grant an application for a "specialized motor carrier" certificate of convenience and necessity. We have previously discussed these and other such ultimate facts in our opinion in *Professional Mobile Home Transport.*

If the Commission is determined to grant authority to [Interstate], it should consider several options before it approves a full grant of authority, *all of which would remove the protest of Statewide.* The first option would be to place a restriction against service to points in Dallas, Texas. . . .

Alternatively, a restriction against service to auto auction facilities in Dallas, Texas, would also satisfy the interest of [Statewide], as the record clearly reflects that *Statewide primarily services the movement of repossessed automobiles to auto auctions in Dallas, Texas, and that [Interstate] does not.* And while [Statewide] does not limit itself to those activities, the movements represent *the vast majority of its traffic.*

With the addition of *either* of these options as a restriction . . . *there would be no further protest lodged by Statewide. . . .*

(emphasis added). Concluding its argument, Statewide urged the Commission to reject Interstate's application "as there is insufficient evidence to support a grant of authority" or, alternatively, to include one or the other of the two suggested limitations if the agency decided to issue the license to Interstate.

Without ruling on Statewide's exceptions, the Commission directed on its own motion that the case be re-opened and an additional hearing held. Interstate and Statewide appeared at the additional hearing on October 18, 1983. Before the hearing concluded, Statewide's counsel informed the examiner that his client and Interstate had reached an "understanding" on Statewide's earlier representation that its interests would be satisfied if Interstate's license did not include carriage service to or from automobile auctions in the City of Dallas. Statewide's counsel advised the examiner: "[I]f that amendment were made, we would withdraw our protest leaving this case in the posture of an unprotested case." Interstate affirmed that it consented to "that restrictive amendment." Thereupon, counsel for Statewide stated: "[W]e formally withdraw, and I will send you [the examiner] a letter con-firming that." The examiner declared that he accepted "the wording of the restrictive amendment, and . . . now consider this matter as an unprotested matter."

Thereafter, on December 5, 1983, the Commission issued the final order we now review. The order grants the license for which Interstate had applied, subject to each of the limitations we have discussed previously, including that proposed by Statewide and accepted by the Commission and Interstate in the hearing held October 18, 1983.

Statewide moved immediately for a rehearing in the case. In its motion, Statewide explained that its earlier withdrawal from the case, based on the representations and stipulations of its counsel, had been the result of a *mistake* and the company wished to continue its protest of the Interstate application, which the company did by several assignments of error set forth in its motion for rehearing.

Statewide described the mistake as follows. On June 27, 1983, in another proceeding in the agency, the Commission permitted amendment of Statewide's own motor-carrier license; the amendment expanded greatly the company's authority to transport repossessed vehicles, subject to certain limitations; when Statewide withdrew from the case on October 18, 1983, the company's counsel did not know of the amendment because he did not represent Statewide in the amendment proceeding; and,

[T]his misunderstanding resulted further from the fact that Statewide's chief executive officer did not appear in person at the [second hearing on October 18, 1983], pursuant to counsel's advice that the same would not be necessary, and so was not in a position to confer with counsel when the subject of the further [limitation] was being considered.

Statewide also pointed out that it had never supplied the confirming letter promised in the hearing of October 18, 1983.

The Commission overruled Statewide's motion for rehearing and Statewide sued

for judicial review in the cause we now consider on appeal.

## STATEWIDE'S WITHDRAWAL FROM THE CONTESTED CASE

In its first point of error, Statewide assails both the Commission's final order and the agency's order overruling the company's motion for rehearing, contending that each order constituted an "abuse of discretion." APTRA § 19(e)(6). In reference to both orders, Statewide argues that it was not bound by the representations and stipulations of its counsel, made in the hearing of October 18, 1983, for the following reasons: (1) Statewide and its counsel never furnished the confirming letter;[3] (2) Statewide's withdrawal resulted from the mistake outlined above; (3) Statewide's motion for rehearing reaffirmed its "vital interest" in the contested case and apprised the Commission, well before its order became "final," of Statewide's continuing opposition to the Interstate application; (4) Statewide would be denied the fair play implicit in due process of law if the company were not allowed to re-enter the case in opposition; and (5) Statewide's doing so should not be precluded on principles of "waiver" or "estoppel" because the Commission was fully apprised of the true facts, regarding the mistake, before the agency's order became "final."

We must say at the outset that none of these contentions logically apply to the Commission's final order (as opposed to the order overruling Statewide's motion for rehearing) because there is no contention that the Commission or Interstate knew that Statewide was acting under a mistake of fact when it withdrew from the case and consented to the final order on terms it had stipulated. There certainly is *nothing* in the record that justifies, for example, Statewide's illogical and rather florid contention that "the Commission seized upon" the misstatement of Statewide's counsel "in order to dispose of Interstate's application as an uncontested matter, notwithstanding the contrary representations in Statewide's motion for rehearing...." We shall therefore consider Statewide's argument as being limited to the Commission's order overruling the company's motion for rehearing.

■ We should first assign meaning to the "abuse of discretion" standard set forth in APTRA § 19(e)(6), as invoked by Statewide in its first point of error.[4] It is a familiar expression in administrative law. As pointed out by Judge Norvell in *Gerst v. Nixon*, 411 S.W.2d 350, 360 (Tex.1967), "abuse of discretion" means that in making a decision the agency has committed one of the following errors: (1) omitted from its consideration a factor that the Legislature intended the agency to consider in the circumstances; (2) included in its consideration an irrelevant factor; or (3) reached a completely unreasonable result after weighing only relevant factors. The proper meaning of the statutory expression would not be complete, however, without accounting for the deference due the agency decision because of the administrative tribunal's expertise in divining and effectuating legislative policy, coupled with the possibility that a reviewing court might not be competent fully to understand, evaluate,

---

3. We attach no importance whatever to the assumed fact that Statewide never furnished the confirming letter. Statewide does not attack the verity of the transcript that sets forth verbatim the proceedings in the hearing held October 18, 1983. Thus, the stated purpose of the letter—to confirm Statewide's unconditional withdrawal from the case—was quite meaningless. It could only corroborate what was shown in the transcript as an undisputed matter of record.

4. Where the "abuse of discretion" standard applies to the agency's decision, under APTRA § 19(e)(6), it implies of course that the decision *is* subject to judicial review under APTRA. In *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931 (Tex.App.1987, no writ), we discussed at length the meaning and scope of the "abuse of discretion" standard as it applies in an appellate court's review of a trial court's decisions of particular kinds. The standard has the purpose of immunizing from appellate revision, within limits, the choice made by the trial court between two or more alternatives legally available to the court in deciding one way or the other. In administrative law, the "abuse of discretion" standard applies in much the same way to limit the scope of review available to the reviewing court in assessing the decision of an administrative tribunal in a contested case.

and orchestrate the factors that led to the agency decision.[5]

■ The "abuse of discretion" standard presumes, of course, that the agency had in law the discretionary power it purported to exercise. In that regard, we hold the Commission had undoubted legal authority to adjudicate the Interstate proceeding as an uncontested matter. When Statewide formally withdrew from the contested case, at the hearing on October 18, 1983, it did so for reasons stated in the record. In AP-TRA § 13(e), the Legislature specifically provided that "informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default," provided such disposition is not "precluded by law." We cannot find that the law precluded informal disposition of the case, in this instance, for any of the reasons stated in APTRA § 13(e). There is no suggestion by Statewide that its withdrawal and the resulting final order were procured by fraud or that the order was ultra vires. *See NLRB v. Ochoa Fertilizer Corporation*, 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). Similarly, the Commission had undoubted legal authority to determine Statewide's motion for rehearing. APTRA § 16(e).

■ The issue reduces then to whether the Commission abused its discretion when it overruled Statewide's motion for rehearing. At that time, the agency *was* apprised of the alleged mistake that had resulted in Statewide's consent to disposing of the case informally, based on the representations and stipulations made in the hearing

on October 18, 1983. We conclude that the Commission did not abuse its discretion because the agency's decision, to overrule the Statewide motion, might reasonably have rested on any or all of the permissible factors discussed below and there is no suggestion that the Commission's decision rested on any forbidden or irrelevant factor.

In the pertinent part of its motion for rehearing, Statewide alleged the particulars of the mistake that had assertedly caused the company to withdraw from the Interstate case. Statewide did not, however, verify these allegations or attempt to prove them by evidence adduced in the Commission; indeed, Statewide *did not request* an evidentiary hearing on those allegations and *did not complain on judicial review* that it was precluded from adducing evidence in that regard. See APTRA § 19(d)(3). Instead, Statewide's position is simply that the Commission was bound to *accept as true* the company's allegations and decide the motion for rehearing *on that basis alone.* The Commission might have done so or it might have ordered an evidentiary hearing on its own initiative, but the agency did neither and we cannot conceive that it abused its discretion in refusing to set aside its final order solely on the basis of Statewide's unverified and unproven allegations.

We hold, in addition, that the Commission might reasonably have overruled Statewide's motion for rehearing even *assuming* that the company *had* withdrawn from the case because of the mistake de-

5. The reference is to footnote 8 of Judge Norvell's opinion in the *Nixon* case, quoting at length from a law-review article. Other writers summarize the "abuse of discretion" standard in much the same way.

Professor Jaffe states:

Discretion ... is the power of the administrator to make a choice from among two or more legally valid solutions. Any solution presumptively is valid if it is an exercise of a granted power and the exercise is motivated by considerations relevant to the purposes of the statute ... Broadly stated an abuse of discretion is an exercise of discretion in which a relevant consideration has been given an exaggerated, an "unreasonable" weight at the expense of others.

Jaffe, Judicial Control of Administrative Action, at 586 (1965). Professor Schwartz categorizes the "abuse of discretion" cases to include:

(1) improper purpose; (2) erroneous and extraneous considerations; (3) erroneous legal or factual foundation; (4) failure to consider relevant considerations; (5) inaction or delay; and (6) departure from established precedents or practice.

Schwartz, Administrative Law § 10.16, at 616 (2d ed.1984). Professor Cooper gives as examples a decision "based on factors that are completely unrelated to the statutory purpose" or one that has been taken in disregard of factors made applicable by the relevant statute. 2 Cooper, State Administrative Law, 764–767 (1965).

scribed in its motion. The record reveals additional factors that would justify the Commission's ruling. For example, the Commission might have reasoned that Statewide should bear the consequences of its own apparent negligence—the negligence implicit in the fact that the company president knew of the amendment to its certificate and of any conflict with the company's position in the Interstate case, the amount of time that had elapsed between the amendment and the hearing, and other matters shown in the record. The Commission might have reasoned that a rehearing would impose unjustified expense and trouble on those who had relied on Statewide's representations and stipulations. Or the Commission might have reasoned that the possibility of real injury to Statewide's interests was minimal at best, and therefore insufficient under the circumstances to justify setting aside the order. Statewide's motion for rehearing neither retracted nor discounted its previous representation that the company "primarily services the movement of repossessed automobiles to auto auctions in Dallas, Texas." Statewide was thus protected from any competition *in fact* by reason of this service being expressly denied Interstate in the license authorized by the Commission's final order.

Still other explanations are inferrable from the record as a whole. The foregoing examples demonstrate, however, that the Commission's decision may not be fairly characterized as an "abuse of discretion" within the meaning of APTRA § 19(e)(6).

In any event, Statewide bears the burden on judicial review of showing that the Commission's decision *was* an abuse of discretion. The company has not really attempted to make that showing beyond the company's argument that: (1) the Commission was bound to take as true the company's allegation that it had withdrawn from the case because of a mistake of fact; and (2) such was the *sole* factor the Commission might consider in deciding the motion for rehearing. We reject the argument. Accordingly, we overrule Statewide's first point of error.

## STATEWIDE'S AMENDED CERTIFICATE

Statewide contends in a second point of error that the Commission erred in failing to take official notice of Statewide's amended certificate or, alternatively, in not granting the company's request in its motion for rehearing:

[T]hat this matter be reopened for further hearing in order to give Statewide an opportunity to introduce evidence concerning its amended SMC No. 30413, particularly as amended in Amendment No. 2 granted on June 27, 1983, ...

Statewide argues that the amendment of its certificate would disprove the Commission's finding of fact that refers to the scope of Statewide's operating authority. Statewide characterizes this finding of fact as being to the effect that the company's "authority was *limited to* the transportation of used vehicles to and from Grand Prairie ... and repossessed vehicles to or from Dallas...." (from Statewide's brief on appeal, emphasis added). Actually, however, the Commission's finding is that Statewide "*has* [under its certificate] authority to transport used vehicles to and from Grand Prairie and repossessed vehicles to or from Dallas...." This precludes, of course, the asserted conflict upon which Statewide erects its argument. We shall, nevertheless, address Statewide's argument under the point of error.

We cannot find in the record any dispute about the scope of Statewide's authority under its amended or its original certificate. Consequently, no need existed for an evidentiary hearing to determine what that authority was in fact.

For all that appears in the record, moreover, the Commission *did* consider Statewide's amended certificate in acting on the company's motion for rehearing where the fact of such amendment was set out explicitly. The Commission's decision overruling Statewide's motion for rehearing manifestly does not rest upon a theory or finding that Statewide had failed to prove the fact that its certificate had been amended. Instead, that decision rests expressly on the ground that the Commission *had* con-

sidered the *"issues raised in the motion for rehearing,* as well as the replies" thereto, and concluded that the motion "raises no issues of fact or law *not fully considered* in its *original* order." (emphasis added). This order is presumptively valid and Statewide has failed to show that the Commission did *not* consider the amended certificate in arriving at its final order *and* in overruling the company's motion for rehearing.

In substance, the company has not shown prejudice in the overruling of its motion for rehearing. Consequently, we may not reverse at the company's urging the presumptively valid order. APTRA § 19(e).

### FINDINGS OF FACT

Statewide assails the final order in several respects that pertain to the findings of fact made by the Commission.

In APTRA § 16(b), the Legislature directed the agency, in cases such as the present, to include in its decision the findings of fact and conclusions of law upon which its decision rested. The statute also states:

Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If,

in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling on each proposed finding....

*Id.* In our decision in *Professional Mobile Home Transport v. Railroad Commission,* 733 S.W.2d 892 (Tex.App.1987, writ ref'd n.r.e.), we set out the findings of *ultimate* fact that must be made, in cases such as the present, in order that the Commission might comply with the statutory conditions upon which "specialized motor carrier" certificates may be issued. The effect of APTRA § 16(b) is to require the Commission to supply findings of *underlying* fact when the agency sets forth the *ultimate* facts "in statutory language." [6]

■ Statewide contends that the findings of underlying fact made by the Commission, and set out in its final order, failed to comply with the requirements of APTRA § 16(b). We hold any error to be harmless because Statewide had withdrawn from the contested case and could not have been prejudiced by the asserted error, as APTRA § 19(e) requires before we may reverse an agency order that is presumptively valid. *See NLRB v. Ochoa Fertilizer Corporation,* 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961).

Statewide also complains that the Commission failed to rule on the *proposed* find-

**6.** Section 5a(d) of the Texas Motor Carrier Act, which pertains expressly to the licensing of "specialized motor carriers," provides that an order granting or denying a certificate of convenience and necessity shall be void unless the Commission sets forth in the pertinent order:

[F]ull and complete findings of fact on the issues of adequacy of the services and facilities of the existing carriers, and the public need for the proposed service....

*Id.* Of course, the requirements of APTRA § 16(b), regarding a statement of underlying facts in support of findings of ultimate fact expressed in statutory language, complement and supplement the foregoing requirements as to adequacy of service and facilities, of existing carriers, and the public need for the proposed new service.

Before 1981, § 5a(d) existed in a form much like that quoted above. The predecessor version of the statute has a long and well-developed judicial history and it is this history that Statewide urges in its contention that the Commission's findings of fact in the present case are insufficient for the purposes intended for find-

ings of underlying facts. *See, e.g., Thompson v. Hovey Petroleum Co.,* 149 Tex. 554, 236 S.W.2d 491 (1951) (absence of finding of underlying fact essential to establish rationality of finding of ultimate fact); *Thompson v. Railroad Commission,* 150 Tex. 307, 240 S.W.2d 759 (1951) (summaries of evidence and parties' argument not "findings of fact" intended by § 5a(d)); *Miller v. Railroad Commission,* 363 S.W.2d 244 (Tex.1962) (findings of underlying facts may not be presumed to exist merely because Commission found one way or the other on ultimate facts, and both together must be sufficient to enable reviewing court to ascertain rationality of Commission's final order); *Morgan Drive Away v. Railroad Commission,* 498 S.W.2d 147 (Tex.1973) (issue of whether "substantial evidence" supports Commission decision not reached until agency reduces mass of evidence to specific and detailed findings, as opposed to conclusions, summaries of the evidence, and recitations of argument); and *Auto Convoy Co. v. Railroad Commission,* 507 S.W.2d 718 (Tex. 1974) (to the same effect in summarizing all of the foregoing decisions).

ings of fact that Statewide submitted to the agency in accordance with agency rules. We hold the error harmless for the reason previously stated. Additionally, APTRA § 16(b) applies in this respect only to the proposed findings submitted by "a party" and Statewide was no longer a "party" after its withdrawal from the contested case.

Finally, Statewide contends the Commission failed in the present case to include in its final order all the requisite ultimate facts set forth in the Texas Motor Carrier Act—as discussed at length in the *Professional Mobile Home Transport* decision— before issuing a "specialized motor carrier" certificate of convenience and necessity. Any error in this regard was harmless for the reasons given previously. Additionally, Statewide waived any error by failing to set forth the complaint in the company's motion for rehearing in the agency. *Burke v. Central Education Agency*, 725 S.W.2d 393 (Tex.App.1987, writ ref'd n.r.e.).

### EXCESSIVE SCOPE OF THE INTERSTATE LICENSE

■ Statewide contends the authority ultimately granted Interstate, in the license authorized by the Commission's final order, exceeds the scope of service described in the Interstate application and in the requisite notice that issued upon the filing of that application. We disagree.

The notice and application referred generally to Interstate's request to transport "repossessed vehicles." The parties and the Commission apparently accepted this description of the scope of service through the time when the examiner prepared his proposal for decision, which included a suggested final order. In that suggested final order, as noted above, the scope of the service was restricted by the various limitations that had been imposed upon the proposed new service, to which Interstate and the other "protestants" had agreed.

The record reveals that the hearing of October 18, 1983, was called and the case re-opened because the Commission was apprehensive about the meaning implicit in the proposed final order, wherein Inter-

state would be given authority to transport "repossessed vehicles." Apparently, the Commission believed the expression to be susceptible of an interpretation that the license authorized Interstate to repossess vehicles, rather than the Commission's intended meaning of transporting vehicles for hire at the request of a shipper who had himself repossessed them under a claim of right to protect his security interest.

When construed in conjunction with the Interstate application, the declarations, restrictions, limitations, explanation, and conditions set out in the final order are reasonably clear that Interstate may transport motor vehicles "in wrecker service only." And its authority does not extend to "wrecked or disabled vehicles" *unless* they are transported "for a holder of a security interest," which implies their repossession by the holder of such an interest.

We therefore construe the final order as limiting Interstate to the carriage of motor vehicles and trailers that have been "repossessed" by the holders of security interests therein, subject of course to the other limiting aspects of the authority described in the certificate. We hold accordingly.

### SUFFICIENCY OF THE EVIDENCE

Statewide contends the Commission's decision, findings, inferences, and conclusions are not supported by "substantial evidence." We hold that Statewide has not shown itself prejudiced by the asserted error, as APTRA § 19(e) requires before we may reverse the presumptively valid final order.

The effect of Statewide's withdrawal from the contested case, as described previously, was to permit the final order to be rendered, on the terms stipulated, with the *consent* of Statewide. All other "protestants" had withdrawn, provided they were protected in the particulars described above. The order, to which all parties had consented, was rendered on the terms stipulated.

The foregoing transactions relieved the Commission "of the very necessity of mak-

ing a supporting record," as stated in *Ochoa*, 368 U.S. at 323, 82 S.Ct. at 348. "A decree rendered by consent 'is always affirmed, without considering the merits of the cause [citation omitted].'" *Id.* Consequently, any question of the sufficiency of the evidence, to support the Commission's determinations, became immaterial so far as Statewide was concerned. We therefore overrule Statewide's final point of error.

Finding no error, we affirm the judgment of the district court.