TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00570-CV






Fleetwood Community Home, Appellant


v.


Eric M. Bost, Commissioner, in his official capacity; and

Texas Department of Human Services, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN102414, HONORABLE DARLENE BYRNE, JUDGE PRESIDING






O P I N I O N



 Fleetwood Community Home appeals from the district court's judgment affirming
a final order of the Texas Department of Human Services. The Department's order terminated
Fleetwood's Medicaid certification for a ten-day period, resulting in Fleetwood's forfeiture of
Medicaid payments for the period. On appeal, Fleetwood contends that the Department's decision
was an abuse of discretion and not reasonably supported by substantial evidence because (1) the
record contained unrefuted evidence that any immediate and serious threat to the facility's residents
had been removed prior to the termination date, (2) two of the Department's findings of fact
misinterpreted pivotal testimony, (3) the Department's inspectors did not review unrefuted evidence
that would have changed their assessment of any threat to the facility's residents, and (4) the
administrative law judge (ALJ) excluded relevant evidence and omitted from his findings and
conclusions evidence favorable to Fleetwood. We will affirm the district-court judgment affirming
the Department's order. 


BACKGROUND 


 Fleetwood operates an Intermediate Care Facility for the Mentally Retarded
(ICF/MR). The Department is the state surveying agency authorized to certify ICF/MR facilities for
Medicaid participation. In this capacity, it conducts periodic facility inspections and determines
compliance with state and federal regulations pertaining to ICF/MR care. Fleetwood is licensed by
the Department as an ICF/MR. 

 From October 13 through 15, 1999, the Department conducted an inspection of
Fleetwood. The Department concluded that there was an immediate and serious threat to the health
and safety of the residents based on the circumstances surrounding one resident's aggression and
biting behavior and another resident's respiratory illness. The Department then terminated
Fleetwood's certification, effective November 7, 1999. Before the termination date, Fleetwood
notified the Department that it had corrected the deficiencies identified in the initial survey. Based
on Fleetwood's representations, the Department conducted another survey from November 2 through
4. During this resurvey, the Department observed further injuries to residents, inadequate staff
training, and failure to provide appropriate nursing services to residents; it concluded that the
immediate and serious threat still existed. A court-appointed trustee inspected the facility two days
later on November 6, 1999; he found untrained staff at the facility. The Department terminated
Fleetwood's certification the next day as scheduled. (1) 

 Fleetwood challenged the ten-day termination period and requested that a hearing be
conducted at the State Office of Administrative Hearings. A hearing was conducted, and the ALJ
issued a proposal for decision recommending that the ten-day termination be affirmed. The
Department entered a final order adopting the ALJ's findings of fact and conclusions of law and
sustained the ten-day termination. 

 After the Department denied its motion for rehearing, Fleetwood filed a suit for
judicial review with the Travis County district court. The district court affirmed the Department's
final order, and Fleetwood brought this appeal.


STANDARD OF REVIEW


 The substantial evidence rule governs appeals of administrative orders. In conducting
a substantial evidence review, we determine whether the evidence as a whole is such that reasonable
minds could have reached the same conclusion as the agency in the disputed action. Stratton v.
Austin Indep. Sch. Dist., 8 S.W.3d 26, 30 (Tex. App.--Austin 1999, no pet.). We may not substitute
our judgment for that of the agency and may only consider the record on which the agency based its
decision. Id. The issue for the reviewing court is not whether the agency reached the correct
conclusion, but whether there is some reasonable basis in the record for its action. City of El Paso
v. Public Util. Comm'n, 883 S.W.2d 179, 185 (Tex. 1994). The findings, inferences, conclusions,
and decisions of an administrative agency are presumed to be supported by substantial evidence, and
the burden is on the contestant to prove otherwise. Stratton, 8 S.W.3d at 30. 


DISCUSSION

"Fast-track termination"

 The issues on appeal center upon the application of so-called "fast-track termination"
of a facility's certification. "Fast-track termination" refers to a period of twenty-three days after the
Department notifies a facility of a finding of "immediate and serious threat" during which the facility
has an opportunity to remedy its deficiencies. If the facility remedies the violations before the end
of the twenty-three-day period, its certification will not be terminated. Texas Health Enters. v. Texas
Dep't of Health, 954 S.W.2d 168, 170 (Tex. App.--Austin 1997, no pet.). Fleetwood argues that
the twenty-three-day remediation period applies and that it remedied the conditions leading to the
Department's finding of immediate and serious threat by the twenty-third day; the Department claims
for the first time on appeal that the remediation period does not apply to ICF/MRs, but only to
nursing facilities, and thus Fleetwood had no right to remediate. We must determine, as a threshold
issue, whether fast-track termination applies to ICF/MRs.

 Title 42, part 488, subpart F of the Code of Federal Regulations governs enforcement
of compliance for long-term care facilities. Subpart F contains section 488.410, which states: "If
there is immediate jeopardy to resident health or safety, the State must . . . either terminate the
provider agreement within 23 calendar days of the last date of the survey or appoint a temporary
manager to remove the immediate jeopardy." 42 C.F.R. § 488.410(a) (2003). If the court appoints
a temporary manager, the state still "must terminate the provider agreement within 23 calendar days
of the last day of survey if the immediate jeopardy has not been removed." (2) Id. 

 Section 488.410 does not on its face state whether it applies to ICF/MRs. See id. 
However, it does refer to termination of a "provider agreement." See id. Section 488.1--the
definition section for part 488--defines "provider" as "a hospital, critical access hospital, skilled
nursing facility, nursing facility, home health agency, hospice, comprehensive outpatient
rehabilitation facility, or provider of outpatient physical therapy or speech pathology services." 42
C.F.R. § 488.1 (2003). Section 400.203 contains definitions specific to Medicaid that apply to the
entire chapter IV, under which part 488 falls. It provides: "As used in connection with the Medicaid
program, unless the context indicates otherwise . . . Nursing facility . . . means an SNF or an ICF
participating in the Medicaid program." Section 488.410 applies to "providers," which are defined
to include "nursing facilities." See 42 C.F.R. §§ 488.1, 488.410. Nursing facilities, in turn, are
defined for Medicaid purposes to include ICFs. Therefore, it is reasonable to conclude that section
488.410 applies to ICF/MRs. 

 Moreover, the statutory basis for part 488 derives from sections 1819(h) and 1919(h)
of the Social Security Act, which have been codified at 42 U.S.C. §§ 1395i-3(h) and 1396r(h),
respectively. Section 1396r(h) outlines enforcement procedures to be used when a survey has
revealed immediate jeopardy in a nursing facility. A nursing facility is defined as an institution


which--(1) is primarily engaged in providing to residents . . . (C) on a regular basis,
health-related care and services to individuals who because of their mental or
physical condition require care and services (above the level of room and board)
which can be made available to them only through institutional facilities, and is not
primarily for the care and treatment of mental diseases. 



42 U.S.C.A. § 1396r(a) (2002). Fleetwood's facility falls squarely within this definition. 
Additionally, the statutory definition of an ICF/MR covers institutions that "provide health or
rehabilitative services for mentally retarded individuals," which would include Fleetwood's facility. 
See id. § 1396d(d) (2002). 

 Both a federal administrative agency and the Department have interpreted the
regulation as applying to ICF/MRs. The Centers for Medicare and Medicaid Services (CMS) within
the Department of Health and Human Services is the federal agency charged with establishing
interpretive guidelines to the federal Medicaid regulations. The CMS has promulgated the State
Operations Manual (SOM) in this respect. See Centers for Medicare and Medicaid Services, State
Operations Manual, available at http://cms.hhs.gov/manuals/pub07pdf/pub07pdf.asp [hereinafter
SOM]. The SOM provides for a remediation period of twenty-three days in cases where a trustee
is appointed. See SOM §§ 3010, 7308. SOM sections 3010 and 7308 provide that after a
determination of immediate jeopardy, a termination will occur unless the jeopardy is removed. (3) 
Although neither SOM section 3010 nor 7308 specifically states that it applies to ICF/MRs, section
7006 applies to nursing facilities receiving Medicaid and defines "nursing facility" as it is defined
in 42 U.S.C. § 1396r(a), which would include an ICF/MR. SOM § 7706; see also 42 U.S.C.A.
§ 1396r(a). Thus, the SOM interprets section 488.410 as providing a twenty-three-day remediation
period to ICF/MRs. 

 The Department has incorporated the SOM into its operating procedures. Department
staff testified that fast-track termination applied in Fleetwood's case and that it afforded Fleetwood
twenty-three days to remove the immediate and serious threat, and if remediation occurred in that
period, termination procedures would cease. It is only on appeal that the Department urges that
section 488.410 does not apply to ICF/MRs.

 Although we owe no deference to agency interpretations when a particular statute or
regulation is unambiguous, we note the CMS and Department interpretations to highlight the effect
of the Department's assertion for the first time on appeal that section 488.410 does not apply to
ICF/MRs. See Amarillo Indep. Sch. Dist. v. Meno, 854 S.W.2d 950, 954 n.6 (Tex. App.--Austin
1993, writ denied). Even if the section were ambiguous, the Department's position on appeal is
inconsistent with its previous, long-standing interpretation. A long-standing and uniformly-applied
interpretation is entitled to greater deference than a recent one. Everest Nat'l Ins. Co. v. Texas
Workers' Comp. Comm'n, 80 S.W.3d 269, 274 (Tex. App.--Austin 2002, no pet.); Texas Citrus
Exch. v. Sharp, 955 S.W.2d 164, 170 (Tex. App.--Austin 1997, no pet.). Thus, we hold that section
488.410 applies to ICF/MRs, entitling Fleetwood to a twenty-three-day remediation period. We
therefore review the Department's decision to terminate Fleetwood's Medicaid certification within
the context of the remediation period and will affirm if there is substantial evidence that Fleetwood
had not removed the immediate and serious threat by the twenty-third day. 

 Fleetwood's issues can be divided into two alleged errors: that the Department's
findings, conclusions, and decision (1) are not reasonably supported by substantial evidence and (2)
are arbitrary, capricious, or an abuse of discretion. (4) We will address these two points separately. 


Substantial evidence review

 Fleetwood challenges the Department's termination as not reasonably supported by
substantial evidence, claiming that (1) findings of fact numbers forty-nine and fifty misinterpreted
pivotal testimony by the court-appointed trustee and (2) the record contains unrefuted evidence that
any alleged threat had been removed prior to the twenty-third day, and the Department presented no
evidence that any threat existed as of that date. These challenges are intertwined because they center
upon the testimony of the court-appointed trustee, who entered the facility on the twenty-second day.

 The Department argues that Fleetwood did not object to any specific findings of fact
or conclusions of law in its motion for rehearing and has thus waived any errors pertaining to them. 
We disagree. Fleetwood's motion provided sufficient notice to the agency of its allegations,
including alleged error with respect to findings of fact forty-nine and fifty. (5) 

 Findings of fact forty-nine and fifty state that (1) "the Trustee did not observe any
immediate and serious threat to the residents of the Petitioner's facility" and (2) "the Trustee
observed that employees in Petitioner's facility were untrained, and concluded that, even if there
were no presently existing immediate and serious threat to the residents, untrained employees
represented a heightened potential for reoccurrence of immediate and serious threats." If supported
by substantial evidence, these findings support termination because an immediate and serious threat
includes the possibility of reoccurrences of the conditions that initially led to the determination of
a threat. See 42 C.F.R. § 488.301; SOM § 3010, app. Q at 3. 

 Fleetwood argues that these findings misinterpreted the trustee because they impute
to his testimony a conclusion that the trustee himself did not actually make: that the untrained staff
he found represented a heightened potential for reoccurrence of the initial circumstances constituting
immediate and serious threat. Although the trustee testified that he did not find an immediate and
serious threat on the twenty-second day, in the same breath he testified that "it could be construed
that having the potential of reoccurrence of the initial occurrences would be heightened by having
untrained staff. And I did find untrained staff." This testimony could reasonably lead the agency
to make findings of fact forty-nine and fifty. 

 Fleetwood attaches too much significance to the word "concluded" in the second
finding. Although the trustee did not explicitly state, "I concluded that the untrained employees
represented a heightened potential for reoccurrence," a reasonable person could find from the
testimony that the trustee did indeed conclude that untrained staff at the facility presented a
heightened potential for threats. The evidence in the record may preponderate against the agency's
decision and nonetheless amount to substantial evidence. Texas Health Facilities Comm'n v.
Charter Med.-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984); Lewis v. Metro. Sav. & Loan Ass'n,
550 S.W.2d 11, 13 (Tex. 1977). If there is evidence to support either affirmative or negative findings
on a specific matter, the decision of the agency must be upheld. Charter Med., 665 S.W.2d at 453. 
The probability that a harm or injury could recur as a result of untrained staff is as much an
immediate and serious threat as the initial occurrence of such harm or injury. The definition of
immediate and serious threat includes the possibility of reoccurrences. We hold that there is
substantial evidence to support findings of fact numbers forty-nine and fifty. 

 Fleetwood next argues that it removed or remedied the deficiencies noted by the
Department prior to the twenty-third day. It claims that there is no evidence in the record of any
deficiencies observed by the Department after November 4, the last day of the resurvey. It then cites
to portions of the transcript where testimony reveals that the Department did not cite any relevant
deficiencies as occurring after November 4 in its follow-up survey of November 17, which resulted
in its recertification. Therefore, its argument runs, the deficiencies could not have existed at any
time after the resurvey on November 4; thus Fleetwood remedied the deficiencies within the twenty-three-day period. Although appellant is correct in that there is little or no testimony in the record as
to the status of most of the deficiencies on the exact dates of November 5, 6, and 7--the last three
days during which it could have remedied its deficiencies--the record clearly contains evidence that
the facility did have the deficiency of untrained staff, as noted by the trustee, on November 6. More
to the point, however, the Department is not required to disprove that a facility has remedied its
violations constituting immediate and serious threats on any given day within the fast-track period,
much less on the penultimate day. Rather, the facility has the burden to prove that it has removed
the immediate jeopardy by the twenty-third day. Here, Fleetwood represented to the Department that
it had removed the jeopardy, which resulted in the Department's November 4 resurvey. The
Department's findings that most of the deficiencies still existed as of its November 4 resurvey
amounts to substantial evidence of immediate and serious threat. Fleetwood relies on the statement
by the trustee that on November 6 there was "no immediate and serious threat" and evidence of
measures it had taken to remedy the immediate jeopardy within the fast-track period. However, the
ALJ was free to weigh this evidence against the Department's evidence of a continuing threat and
conclude that Fleetwood had not removed the threat. We hold that the record contains substantial
evidence to support the Department's order.

 Fleetwood also argues that the Department's order was not reasonably supported by
substantial evidence because (1) the ALJ excluded relevant and material evidence and erred in failing
to make findings and conclusions reflecting evidence favorable to Fleetwood and (2) state surveyors
conceded that they did not review or disregarded evidence at the time of inspections that would have
changed their assessment of immediate and serious threat. 

 The evidence excluded by the ALJ pertained to a witness's observation of the trustee
making a phone call requesting clarification of why he was needed at the facility. However,
Fleetwood brings up the issue of the exclusion of this evidence for the first time on appeal. Because
Fleetwood did not complain in its motion for rehearing about the ALJ's exclusion of this evidence, 
it did not preserve the issue for review. To preserve error, the motion must set forth: (1) the
particular finding of fact, conclusion of law, ruling, or other action by the agency that the
complaining party asserts was error; and (2) the legal basis upon which the claim of error rests. 
Central Power & Light Co./Cities of Alice v. Public Util. Comm'n of Tex., 36 S.W.3d 547, 569 (Tex.
App.--Austin 2000, pet. denied); Burke v. Central Educ. Agency, 725 S.W.2d 393, 397 (Tex.
App.--Austin 1987, writ ref'd n.r.e.). Fleetwood did not allege that evidence was erroneously
excluded in its motion for rehearing. It has thus not preserved the issue for our review. 

 Fleetwood claims that the ALJ failed to make findings or conclusions reflecting
considerable evidence favorable to Fleetwood that would have proved it had removed the immediate
and serious threat. In other words, the ALJ did not make the findings or conclusions that Fleetwood
sought, and now Fleetwood asks this Court to review the record and remand the case so that findings
and conclusions favorable to Fleetwood will be made. Such an action is not in the province of this
Court, which must defer to the ALJ's findings and conclusions if there is some reasonable basis in
the record to support them. See Charter Med., 665 S.W.2d at 452. The test is not whether the
agency reached the correct conclusion, but whether the evidence in support of its conclusion is
substantial. Id. We may not substitute our judgment for that of the ALJ regarding the weight of the
evidence. Id. Here, the record contains substantial evidence to support the ALJ's findings and
conclusions regarding immediate and serious threat. Even if the evidence that Fleetwood claims was
not acknowledged in any findings or conclusions preponderates against the Department's
determination of immediate and serious threat, we cannot say that the record lacks substantial
evidence to support the Department's conclusion. 

 Fleetwood asserts that the Department's surveyors repeatedly testified that they did
not have complete information regarding resident injuries and failed to review facility charts and
records prior to making their determinations of immediate and serious threat. In one instance, a
surveyor noticed an unexplained bruise on a resident during the resurvey in early November. 
Although the presence of the bruise and the facility nurse's lack of knowledge of the bruise were
factors that led the surveyor to determine that there was still an immediate and serious threat present,
the surveyor failed to look at the resident's chart, which revealed that the resident had been out of
the facility for several days until the night before the resurvey. Fleetwood asserts that the ALJ erred
by not making a finding or conclusion reflecting such mitigating testimony. However, the evidence
of the injury itself is substantial evidence to support the findings and conclusions that the ALJ did
make; the ALJ need not have weighed the evidence according to Fleetwood's urging. Indeed, the
ALJ's omission of findings and conclusions reflecting possible mitigating circumstances goes to his
fact-finding role, and we cannot overturn his conclusions if there is substantial evidence to support
them. The evidence in the record of resident injuries, untrained staff, and failure to provide adequate
and appropriate nursing services amounts to substantial evidence despite evidence offered by
Fleetwood of measures it took to remediate. We overrule Fleetwood's issue asserting lack of
substantial evidence.

Arbitrary and capricious review

 Fleetwood argues that the Department's termination of its Medicaid certification was
arbitrary, capricious, and an abuse of discretion. Generally, an administrative decision is not
arbitrary and capricious if it is supported by substantial evidence. Gerst v. Nixon, 411 S.W.2d 350,
354 (Tex. 1966); Texas Health Enters. v. Texas Dep't of Health, 954 S.W.2d 168, 173 (Tex.
App.--Austin 1997, no pet.). However, Fleetwood cites several cases requiring appellate courts to
otherwise set aside administrative actions taken in contravention of due process rights. See Lewis
v. Metro. Sav. & Loan Ass'n, 550 S.W.2d 11 (Tex. 1977); Park Haven, Inc. v. Texas Dep't of Human
Servs., 80 S.W.3d 211 (Tex. App.--Austin 2002, no pet.); Starr County v. Starr Indus. Servs., 584
S.W.2d 352 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). We find these cases inapposite here
and refuse to extend their holdings. Lewis dealt exclusively with an ALJ's rulings excluding
competent and relevant evidence offered by the appellant. See Lewis, 550 S.W.2d at 12. The Court
held that the ALJ had erred in excluding the evidence and that an administrative order can be invalid
for arbitrariness when a contesting party is denied due process of law in the conduct of the
administrative hearing. Id. at 15-16. As already discussed, Fleetwood did not preserve its error
relating to exclusion of evidence by the ALJ. 

 Park Haven concerned the question of whether there was substantial evidence to
support an ALJ's finding that the Department had considered the threshold, mandatory statutory
criterion of a nursing home's compliance history in finding that its deficiencies posed a serious threat
to resident health and safety. See Park Haven, 80 S.W.3d at 213. Noting that the ALJ had excluded
evidence precisely on the point of the home's compliance history, this Court determined that the
record contained no evidence going to the home's compliance history other than a generalized
description of what usually happens in the assessment process. Id. at 215. We held that the ALJ's
order was thus arbitrary, capricious, and not supported by substantial evidence. Id. Here, the record
contains evidence pertaining to whether Fleetwood's deficiencies amounted to an immediate and
serious threat, specifically testimony regarding staff training, resident injuries, and nursing services. 

 In Starr County, this Court examined two questionable actions taken by the Texas
Water Quality Board with respect to a permit applicant: (1) lack of providing notice to the applicant
of additional requirements it had to meet and (2) consideration of a non-statutory standard in its
decision to deny the application. See Starr County, 584 S.W.2d at 356. Citing Lewis for the
proposition that an agency order may be supported by substantial evidence and yet be invalid for
arbitrariness, we affirmed the district court's judgment vacating the order. Id. at 355-56. There, we
noted that the major factor running through arbitrary-capricious review cases is that parties must be
able to know what is expected of them in the administrative process. Id. at 356. For instance, when
an agency has been subjected to pressure from congressional sources in issuing an order, the order
may be invalid for arbitrariness or capriciousness. Id.; see Texas Med. Ass'n v. Mathews, 408
F.Supp. 303, 306 (W.D. Tex. 1976) (setting aside agency order because the agency had been
subjected to pressures from congressional sources). Fleetwood has not asserted any errors
committed by the ALJ or the Department that rise to the level of denying it notice of the
administrative process or constituting arbitrary action. 

 An agency abuses its discretion in reaching a decision if it omits from its
consideration factors that the legislature intended the agency to consider, includes in its consideration
irrelevant factors, or reaches a completely unreasonable result after weighing only relevant factors. 
Texas Health Enters., 954 S.W.2d at 173 (citing Statewide Convoy Transps., Inc. v. Railroad
Comm'n of Tex., 753 S.W.2d 800, 804 (Tex. App.--Austin 1988, no writ)). This Court must
presume that the order is valid, and the burden of proving otherwise is on the appellant. Id. 
Fleetwood does not argue that the ALJ or the Department failed to consider relevant, legislative
factors or considered irrelevant factors in reaching its decision. Furthermore, we have determined
in our substantial evidence review that the Department's result was not completely unreasonable. 
We thus overrule Fleetwood's issue with respect to arbitrariness, capriciousness, and abuse of
discretion.


CONCLUSION


 The Department's decision was supported by substantial evidence and was not an
abuse of discretion. We affirm the district court's judgment affirming the Department's order that
terminated Fleetwood's Medicaid certification for the ten-day period.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: April 10, 2003

1. Fleetwood immediately sought recertification, and the Department recertified it on
November 17, 1999, after conducting another survey that indicated Fleetwood had corrected its
deficiencies.
2. Neither party disputes that the district court appointed a temporary manager (trustee) in this
case. 
3. The SOM and the Department use the phrase "immediate and serious threat" as a surrogate
for the phrase used in the regulations, "immediate jeopardy." See 42 C.F.R. §§ 488.301, .410 (2003);
Centers for Medicare and Medicaid Services, State Operations Manual § 3010, app. Q at 3, available
at http://cms.hhs.gov/manuals/pub07pdf/pub07pdf.asp [hereinafter SOM]. The two are functional
equivalents, respectively meaning "having a high probability that serious harm or injury to patients
could occur at any time, or already has occurred and may well occur again if patients are not
protected effectively from the harm, or the threat is not removed" and "a situation in which the
provider's noncompliance with one or more requirements of participation has caused, or is likely to
cause, serious injury, harm, impairment, or death to a resident." SOM § 3010, app. Q at 3; 42 C.F.R.
§ 488.301. 
4. Fleetwood's brief lists four issues presented but briefs the issues in only two parts, with
several subparts. We will address its arguments as they fall under the two main alleged errors.
5. To preserve error, the appellant must assert the error in its motion for rehearing with
sufficient precision to provide notice to the agency of the alleged error. Bowman v. Tex. State Bd.
of Dental Exam'rs, 783 S.W.2d 318, 321 (Tex. App.--Austin 1990, no writ). In its motion for
rehearing, Fleetwood did allege errors regarding numerous findings of fact and conclusions of law,
although it did so rather inelegantly. It referenced what it alleged to be erroneous findings of fact
and conclusions of law in its motion for rehearing not by number (e.g., "finding of fact number
fifty"), but as references to page numbers and numbered paragraphs appearing in the proposal for
decision (e.g., "finding of fact [at p. 17, ¶ 50]"). We recommend that future litigants utilize the
former method, which will streamline the reader's interpretation.