Preston SMITH, Governor of the State of
Texas, et al., Appellants,

v.

Tom CRADDICK et al., Appellees.

No. B–2932.

Supreme Court of Texas.

Sept. 16, 1971.

Crawford Martin, Atty. Gen., Pat Bailey,
Asst. Atty. Gen., Austin, for relators.

Golden, Burrow, Potts & Boeckman,
Duncan Boeckman, Dallas, for respondents.

REAVLEY, Justice.

The appellees (Tom Craddick, Robert L.
Monaghan, George Willeford, and James
L. Kent) as a member of the Texas Legis-
lature, the Republican County Chairman
of Midland County, the Republican State
Chairman, and as qualified voters, brought
this suit as a class action on behalf of
all voters of Texas to obtain declaration
of the unconstitutionality of House Bill
No. 783, 62nd Legislature, Regular Session,
1971,[1] and to enjoin the appellants (Preston
Smith, Crawford Martin, Martin Dies, Jr.,

---

1. Chapter 981, pg. 2974 of Vernon's Texas
Session Law Service, Laws 1971, 62nd
Legislature, Art. 195a–3, Secs. 1–5, Ver-
non's Ann.Civ.St.

Elmer Baum, Rosenelle Cherry and Barbara Culver) who hold the offices of Governor and Secretary of State of Texas, Chairman of the State Democratic Executive Committee, County Clerk and County Judge of Midland County, from acting to conduct any election procedure pursuant to that House Bill No. 783. The district court entered its final judgment on August 10, 1971, declaring the statute unconstitutional and permanently enjoining the Secretary of State from conducting elections thereunder. The appellants filed their appeal directly to this court pursuant to Art. 1738a, Vernon's Ann.Civ.St. and Rule 499a, Texas Rules of Civil Procedure; and their motion to advance the cause filed on September 3 was granted and the cause was submitted on September 9.

By the statute in question the Legislature has redrawn the representative districts of the state from which members of the House of Representatives of the Texas Legislature are elected. The statute is attacked as violating Section 26, Article III of the Texas Constitution, Vernon's Ann.St. The constitutionality of this redistricting statute is the only question presented to us by the briefs and record. Furthermore, it is the only question over which we have jurisdiction in the direct appeal. State v. Spartan's Industries, Inc., 447 S.W.2d 407 (Tex.1969).

Article III, Section 26 of the Texas Constitution has provided since 1876 as follows:

"The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by the number of members of which the House is composed; provided, that whenever a single county has sufficient population to be entitled to a Representative, such county shall be formed into a separate Representative District, and when two or more counties are required to make up the ratio of representation, such counties shall be contiguous to each other; and when any one county has more than sufficient population to be entitled to one or more Representatives, such Representative or Representatives shall be apportioned to such county, and for any surplus of population it may be joined in a Representative District with any other contiguous county or counties."

Representation in the House of Representatives is thereby apportioned among the counties of the state according to population. If the population of a county is so small as not to entitle that county to one representative, two or more contiguous *counties* may be joined in a separate district. When one county has a population which exceeds that which entitles it to one or more representatives, that *county* is to be apportioned to what it is entitled, and the *county* may be joined with contiguous counties for the district representative to which the surplus population entitles it. No restriction is seen in this language to prevent drawing district lines within a single county.

The Legislature met the constitutional requirements from 1875 until 1966 in that no county was divided to form a representative district across the county line. Then came the Kilgarlin case in which the three judge federal court struck the flotorial representative districts of the Texas statute then in effect (Kilgarlin v. Martin, 252 F.Supp. 404, S.D.Tex.1966) and the Supreme Court held that the population variation between the districts required further justification (Kilgarlin v. Hill, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771, 1967). These decisions followed the decisions of the United States Supreme Court holding that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires substantially equal legislative representation for all citizens of a state. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). *Cf.* Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct.

1225, 22 L.Ed.2d 519 (1969); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

The requirement of the United States Constitution takes precedence and any inconsistency therewith in the Texas Constitution is thereby vitiated. Whatever Section 26 of Article III provides, there must be equal representation to accord with the holdings of the federal courts. The paramount consideration is the variation, per representative, between the population of the various districts. This variation is usually computed by beginning with the ideal or average district population (in Texas with a 1970 population of 11,196,730 and 150 representatives, that ideal is 74,-645), figuring the percent by which the district of the smallest population is overrepresented and the percent by which the district of the largest population is underrepresented, and then adding the two percentage figures together. In Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967) the Florida senate districts under attack ranged from 15.09% overrepresentation to 10.56% underrepresentation, and the representative districts ranged from 18.28% overrepresentation to 15.27% underrepresentation. The variation or deviation was thus 25.65% in the senate districts and 33.55% in the representative districts. These variations were held to render the Florida plan unconstitutional in the absence of acceptable reasons for the variances. The Texas representative districts considered in the Kilgarlin case, supra, varied from 14.84% overrepresentation to 11.64% underrepresentation. The U. S. Supreme Court held that these variances invalidated the apportionment plan unless satisfactorily justified. A reading of the opinions of the lower court and the Supreme Court leaves us with the impression that justification of those variances would be extremely difficult to make to the satisfaction of the Supreme Court.

Another problem is the flotorial district. There is no federal objection to a district that includes several counties, but if the district includes within its boundaries the boundaries of another district or districts, an impermissible population disparity is likely. The larger district may be tested against the ideal as to population variation on the basis of only the member or members elected directly from that particular district, in which case the variation would probably be substantial. Furthermore, the voters who reside within that portion of the flotorial district which composes the encompassed district vote for more than one representative, and the effect is to debase the votes of others who reside in the flotorial district outside the encompassed district. Kilgarlin v. Martin, 252 F.Supp. 404, 418.

Primary considerations of the Fourteenth Amendment of the United States Constitution as laid down by the federal courts have the following effect upon the Texas Constitution (Art. III, Section 26):

1. Section 26 requires that apportionment be by county and when two or more counties are required to make up a district of proper population, the district lines shall follow county boundaries and the counties shall be contiguous. A county not entitled to its own representative must be joined to contiguous counties so as to achieve a district with the population total entitled to one representative. The only impairment of this mandate is that a county may be divided if to do so is necessary in order to comply with the equal population requirement of the Fourteenth Amendment. We are not to be understood as proscribing multi-member districts within a single county; in the absence of some discriminatory effect neither state nor federal constitution presents any obstacle there. Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965); cf. Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971).

2. The first clause of the proviso dictates that a county must be formed into a separate district if it has sufficient population for one representative. This would

be effective only so long as the population of that county is within permissible limits of variation. If the population of the county is slightly under or over the ideal population figure, the state constitution requires that the county constitute a separate district.

3. The final clause of Section 26 dictates that, for any surplus population, the *county* shall be joined with contiguous county or counties in a flotorial district. This dictate is nullified.

4. With the nullification of the dictate relative to use of the surplus population (less than enough for a district) of a county which already has one or more representatives allocated thereto, it becomes permissible to join a portion of that county (in which the surplus population reside and which is not included in another district within that county) with contiguous area of another county to form a district. For example, if a county has 100,000 population, and if a district of 75,000 population is formed wholly within that county, the *county* is given its district, and the area wherein the 25,000 live may be joined to a contiguous area.

5. It is still required that a county receive the member or members to which that county's own population is entitled when the ideal district population is substantially equalled or is exceeded. No exception to this requirement is made by what is said in 4. above. Again, all requirements of Section 26 are inferior to the necessity of complying with the Equal Protection Clause.

The district plan enacted by the 62nd Legislature in 1971, House Bill 783, cuts the boundaries of 33 counties. Forty-three districts include only a portion of one or more counties with the contiguous county or counties. Eighteen counties with less than 74,645 population were divided, and portions of each of those counties were placed in two or more districts. Although Grayson County has a population of 83,225, that *county* was not apportioned a representative as required by Section 26, but a portion of the county was placed in district 14 with Fannin County, and the remaining portion of Grayson was placed in district 60 with counties to the west.

◼ Appellants offered no evidence to establish that the wholesale cutting of county lines, as provided in House Bill 783, was either required or justified to comply with the one-man, one-vote decisions. The burden is on one attacking an act to establish its invalidity. Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 (1939); Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, (1934). Appellees proved conclusively that this statute fails to do what is required by the constitution in those respects discussed in paragraphs 1. and 5. above. No presumption of validity remained in the face of that showing. If these districting requirements were excused by the requirements of equal representation, the appellants had the burden of presenting that evidence. They presented none.

◼ Giving all weight and presumption to favor the act of the Legislature, this statute clearly violates the constitution. This court must therefore give effect to the language of the constitution without regard to the consequences. Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147 (1942). The statute must be declared invalid in its entirety. See Smith v. Patterson, 111 Tex. 535, 242 S.W. 749 (1922).

◼ The Attorney General in his brief for appellants puts our choice in these words:

"The Court in the instant case is faced with the complex problem of deciding whether to invalidate an extremely complex legislative enactment or making the determination that Reynolds v. Sims and the numerous ensuing cases in this area have rendered the restrictive provisions in Section 26 of Article III of the Constitution of Texas as no longer operable and binding upon the Legislature of the State of Texas in redistricting the House of Representatives or Senate."

We understand some of the difficulties of every undertaking to redistrict this state. However, this court may not abrogate any provision of the constitution for the sake of simplicity. The federal requirement of equal representation clearly has not nullified Section 26 of Article III in its entirety. Then certainly this court may not choose to do so.

The appellees filed a motion to dismiss this appeal for want of jurisdiction, their contention being that a question of fact existed in the trial court. This record established conclusively the unconstitutionality of the statute and presented to the trial court and to this court no contested issue of fact but only a question of law. Rule 499a(c), T.R.C.P.; Railroad Commission v. Sterling Oil & Refining Co., 147 Tex. 547, 218 S.W.2d 415 (1949). The motion to dismiss is overruled.

The judgment of the trial court is affirmed. No motion for rehearing may be filed in this cause.

DANIEL, J., not sitting.