

# The Attorney General of Texas

May 30, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of the State of Texas
L.B.J. Building
Austin, Texas

Opinion No.  MW-353

Re: Reapportionment  of  the
Texas House of Representatives

Dear Mr. Bullock:

You have questioned the constitutionality of the Committee Substitute to House Bil 960, recently enacted by the legislature, which would reapportion the Texas House of Representatives. You raise five specific issues relating thereto. We limit our consideration to your specific concerns. First, you ask that we address the following:

> 1. The proposed reapportionment plan divides several small counties into more than one representative district and combines the excess populations of counties with more than sufficient population for a single district into multiple adjacent districts. Is the proposed plan valid in light of the decision issued by the Supreme Court of Texas in Smith v. Craddick, 471 S.W. 2d 375 (Tex. 1971)?

The Smith v. Craddick case to which you refer considered the Texas Constitutional provision relating to reapportionment of the House of Representatives, article III, section 26, as it relates to federal law. At issue was the validity of a statute which purported to effect reapportionment of the House following the 1970 federal census. The state constitutional provision reads now, as then, as follows:

> Sec. 26. The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by the number of members of which the House is composed; provided, that whenever a single county has sufficient population to be entitled to a Repesentative, such county shall be formed into a separateRepresentative District, and when two or more counties are required to make up the ratio of representation, such counties shall be contiguous to each other; and when any one county has more than

sufficient population to be entitled to one or more Representatives, such Representative or Representatives shall be apportioned to such county, and of any surplus of population it may be joined in a Representative District with any other contiguous county or counties. (Emphasis added.)

After citing a number of federal court decisions and discussing the cases of Kilgarlin v. Martin, 252 F.Supp. 404 (S. D. Tex. 1966) and Kilgarlin v. Hill, 386 U. S. 120 (1967), the Texas Supreme Court noted in Smith v. Craddick that the requirement of the United States Constitution takes precedence and any inconsistency therewith in the Texas Constitution is thereby vitiated. "Whatever Section 26 of article III provides, there must be equal representation to accord with the holdings of the federal courts." 471 S.W.2d at 377. The Texas Court summarized at 471 S.W.2d at 377, 378 the effect of federal decisions regarding the Fourteenth Amendment to the U. S. Constitution on article III, section 26 of the Texas Constitution:

> 1. Section 26 requires that apportionment be by county and when two or more counties are required to make up a district of proper population, the district lines shall follow county boundaries and the counties shall be contiguous. A county not entitled to its own representative must be joined to contiguous counties so as to achieve a district with the population total entitled to onerepresentative. The only impairment of this mandate is that a county may be divided if to do so is necessary in order to comply with the equal population requirement of the Fourteenth Amendment. . . . Fortson v, Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed. 2d 401 (1965); cf. Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1790, 29 L.Ed.2d 268 (1971).

> 2. The first clause of the proviso dicates that a county must be formed into a separate district if it has sufficient population for one representative. This would be effective only so long as the population of that county is within permissible limits of variation. If the population of the county is slightly under or over the ideal population figure, the state constitution requires that the county constitute a separate district.

> 3. The final clause of Section 26 dictates that, for any surplus population, the county shall be joined with contiguous county or counties in a flotorial district. This dictate is nullified. (Emphasis in original.)

> 4. With the nullification of the dictate relative to use of the surplus population (less than enough for a district) of a county which already has one or more representatives allocated thereto, it becomes permissible to join a portion of that county

(in which the surplus population reside and which is not included in another district within that county) with contiguous area of another county to form a district.  For example, if a county has 100,000 population, and if a district of 75,000 population is formed wholly within that county, the county is given its district, and the area wherein the 25,000 live may be joined to a contiguous area.  (Emphasis in original.)

5.    It is still required that a county receive the member or members to which that county's own population is entitled when the ideal district population is substantially equalled or is exceeded.  No exception to this requirement is made by what is said in 4, above.   Again, all requirements of section 26 are inferior to the necessity of complying with the Equal Protection Clause.  (Emphasis added.)

The statute considered in Smith v. Craddick was held unconstitutional by the Supreme Court of Texas because it ignored the integrity of county lines, the observance of which is commanded by the Texas Constitution, when it was unnecessary to ignore them in order to comply with federal constitutional requirements.  If the bill about which you inquire would have the same effect we believe it would meet a similar fate.

However, we cannot say that the proposed plan is invalid.  Its validity turns on the facts upon which its provisions are based and the federal law considerations with which it must comport.   At the time Smith v. Craddick was considered, the federal Voting Rights Act, 42 U.S.C. sec · 1971, et seq., had not been applied to Texas, and the requirements of the Fifteenth Amendment to the United States   Constitution were not discussed.

Our review is necessarily limited to the facial characteristics of the proposed legislation. In the absence of appropriate determinations of fact, which cannot be made in an attorney general opinion, we have no basis for concluding that deviations of the bill from the county-line requirements of the Texas Constitution, if any, are not compelled by the dominant requirements of the United States Constitution.  See White v. Register, 412 U.S. 755 (1973); Mauzy v. Legislative Redistricting Board, 471 S.W.2d 570 (Tex. 1971).

Your remaining questions are as follows:

2.    May an apportionment plan combine primarily rural counties with urban areas in a single representative district, when alternative plans can or could be adopted with preserve rural communities of interest?

3.    Because the United States Bureau of the Census has stated that the population figures for minority groups are "provisional," pending the outcome of federal court litigation challenging the validity of these figures, may the Legislature reapportion into districts on the basis of these figures?

4. Because the guidelines for submitting a reapportionment plan to the United States Department of Justice under the Voting Rights Act specify that recent election data be included in the submission, may the Legislature reapportion representative districts without considering the effects of election returns and voter registratration data on proposed minority districts?

5. At least one member of the committee on regions, compacts and districts has expressed his opinion that the reapportionment plan has been drafted to intentionally discriminate against his political int erest.    May a reapportionment plan adopted by the Legislature have either the purpose or effect of discriminating against any recognizable political interest?

These questions are virtually identical with four questions in your recent request for an attorney general opinion relating to Senate Bill 800, which reapportions the Senate.   We find no law, and have been cited to ncne  that requires different answers to these questions depending on whether they are directed at the Senate or House reapportionment plan.    Consequently, we refer you to Attorney General Opinion MW-350 (1981), for answers to these questions.

## SUMMARY

C.S.H.B. 960, the House of Representatives' reapportionment bill, would not be held facially unconstitutional for its departures, if any, from the county-line requirements of article III, section 26 of the Texas Constitution.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY, III
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moelinger