

# The Attorney General of Texas

May 30, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas 78774

Opinion No. MW-350

Re: Constitutionality of SB-800, Senate Redistricting Bill

Dear Mr. Bullock:

You ask us several questions in connection with Senate Bill 800, which redistricts state senatorial positions. Your questions are directed at what the Texas Legislature may do in drawing up a reapportionment plan. They do not require us to determine the effect of the reapportionment plan which the Senate has enacted, or whether the Senate could have developed an alternate plan with particular characteristics. In any case, such inquiries would involve the investigation and resolution of fact questions, which cannot be done in the opinion process.

A brief discussion of the main principles governing reapportionment will provide a useful context for our answers to your questions. In Reynolds v. Sims, 377 U.S. 533, 568 (1964), the Supreme Court held that the equal protection clause requires that seats in a state legislature must be apportioned on a population basis. U.S. Const. amend. 14, §2. An apportionment plan which substantially dilutes the weight of some votes when compared with votes of persons living in other parts of the state is unconstitutional. Reynolds v. Sims, supra at 568. Districts must therefore be as nearly of equal population as practicable. Id. at 577.

The Supreme Court has said that an apportionment scheme, on particular facts, might operate to minimize or cancel out the strength of racial or political elements of the population. Fortson v. Dorsey, 379 U.S. 433, 438-39 (1965). Such an apportionment scheme would invidiously discriminate against rights protected by the fourteenth amendment of the United States Constitution. Burns v. Richardson, 384 U.S. 73, 88 (1966).

The federal Voting Rights Act of 1965 adds another standard against which a reapportionment plan must be measured. It prohibits any state from denying or abridging the right of any United States citizen to vote on account of race, color, or membership in a language minority. 42 U.S.C. §§1973 to 1973d, 1973k to 1973l (1976). Under the Act, changes in the

election laws, including reapportionment laws, must be submitted to the United States Attorney General for his approval. 42 U.S.C. S1973c; Conner v. Waller, 421 U.S. 656 (1975); see also 46 Fed. Reg. 874 (1981) (to be codified in 28 C.F.R. S51.12(c)).

We turn to your first question:

1. TEX. CONST. art. 3, sec. 28, directs the Legislature to apportion the State into Senatorial districts agreeable to the provisions of Section 25 of Article 3. Federal law requires reapportionment to be based on equal population among districts, within certain allowable deviations. Within these allowable deviations, must the Legislature take into account the number of qualified electors residing within each district as dictated by TEX. CONST. art. 3, sec. 25?

Article III, section 25 of the Texas Constitution provides in part that "the State shall be divided into Senatorial Districts . . . according to the number of qualified electors, as nearly as may be . . . ." The section 25 requirement that the state be divided into senatorial districts on the basis of qualified electors is unconstitutional on its face as inconsistent with the federal constitutional standard. In Kilgarlin v. Martin, C.A. No. 63-H-390 (W.D. Tex., January 11, 1965) (summary judgment), see also Kilgarlin v. Martin, 252 F. Supp. 404,411 (S.D. Tex. 1966), the court held that this provision violated the equal protection clause of the fourteenth amendment of the United States Constitution. It did not require apportionment of senatorial districts on a population basis resulting in districts as nearly of equal population as is practicable. See Reynolds v. Sims, supra at 577.

Your second question is as follows:

2. May an apportionment plan split counties into two or more Senatorial districts when an alternative plan can or could be drawn which maintains county integrity?

No provision in Texas or federal law invalidates an apportionment plan which splits counties into two or more senatorial districts or requires a plan to maintain county integrity. Article III, section 25 of the Texas Constitution merely requires that senatorial districts shall be of contiguous territory. Compare Tex. Const. art III, S26 (representative's districts shall follow county lines). See Smith v. Craddick, 471 S.W.2d 375 (Tex. 1971).

Your third question is as follows:

3. When a county has sufficient population to justify one or more Senatorial districts entirely within that county's boundaries, must an apportionment plan provide that county with the maximum number of full Senatorial districts which can be contained within the county?

We have neither found, nor have we been directed to any provision of state or federal law which requires a county to be given the maximum number of full senatorial districts which can be contained within it.

Your fourth question is as follows:

4. May an apportionment plan combine primarily rural counties with urban areas in a single Senatorial district, when alternative plans can or could be adopted which preserve rural communities of interest?

No state or federal law prohibits the combination of rural and urban areas in a single senatorial district. The Supreme Court has stated that "economic and other group interests" are insufficient to justify deviation from strict population equality. Reynolds v. Sims, supra at 579-80.  See Kirkpatrick v. Preisler, 394 U.S. 526 (1969). Thus, federal law does not require states to recognize the common interests of groups in reapportionment.  It does, however, permit them to do so. See Kelly v. Bumpers, 340 F. Supp. 568, 578 (E.D. Ark. 1972).

In Gumfory v. Hansford County Commissioners Court, 561 S.W.2d 28 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.), the court dealt with a challenge to county commissioners precincts drawn so that in each precinct city dwellers formed a majority over persons residing in the rural area of the county. The court stated that the residents of the county outside the cities "are not a group subject to suspect classification for invidious discrimination under the 14th Amendment . . . ."  Cf. Lockport v. Citizens for Community Action, 430 U.S. 259 (1977) (state might recognize distinctive voter interests of urban and rural voters in 'single shot' referendum).

You next ask:

5. Because the United States Bureau of the Census has stated that the population figures for minority groups are "provisional", pending the outcome of federal court litigation challenging the validity of these figures, may the Legislature reapportion into districts on the basis of these figures?

Census figures have been challenged in federal court as representing an undercount of blacks and hispanics. In Young v. Klutznick, 497 F. Supp. 1318 (E.D. Mich. 1980), the district court enjoined the Bureau of the Census from certifying population totals for any states.   Justice Stewart, however, stayed this order. Klutznick v. Young, Docket No. A-533 (Dec. 24, 1980); see Klutznick v. Carey, 66 L. Ed. 2d 614, n. at 615 (1980).  Thus,  the census totals have been certified to the President and provided to the states as required by law. 13 U.S.C. §141(b), 141(c).

In the past, courts have acknowledged that not all inhabitants are counted in the decennial census. Gaffney v. Cummings, 412 U.S. 735, 745-51 (1973).  They are seen,

nevertheless, as the best available source of population data for redistricting purposes. Kirkpatrick v. Preisler, 394 U.S. 526 (1969).

Article III, section 28 0f the Texas Constitution requires the legislature to redistrict at its first session after the publication of each census. See Mauzy v. Legislative Redistricting Board, 471 S.W.2d 570 (Tex. 1971). The legislature may reapportion on the basis of the recent census figures.

Your next question is as follows:

6.   Because the guidelines for submitting a reapportionment plan to the United States Department of Justice under the Voting Rights Act specify that recent election return data be included in the submission, may the Legislature reapportion Senatorial districts without considering this data?

Recent election return data is among those items generally required to be submitted in connection with redistricting plans. See 46 Fed. Reg. 875-76 (1981) (to be codified in 28 C.F.R. §§51.25, 51.26). No provision of the Voting Rights Act, however, requires that the legislature consider such data. Whether Senate consideration of this data would enhance its ability to draft a plan acceptable to the Attorney General beyond the scope of your question and this opinion.

Your final question is as follows:

7.   At least one Senator has expressed his opinion that the reapportionment plan has been drafted to intentionally discriminate against his political interest. May a reapportionment plan adopted by the Legislature have either the purpose and/or effect of discriminating against any recognizable political interest?

A reapportionment plan may not have the purpose or effect of diluting the voting strength of linguistic or racial minorities. 42 U.S.C. 1971, 1973-1973dd-5 (1976). No group, however, has a constitutionally protected right to legislative seats in proportion to its voting strength. White v. Register, 412 U.S. 755, 765-66 (1973).

A reapportionment plan is not necessarily in violation of the equal protection clause if it seeks to protect incumbents. White v. Weiser, 412 U.S. 783, 797 (1973). An incumbent, however, has no right to have his district maintained during the reapportionment process. See City of Philadelphia v. Klutznick, 503 F. Supp. 663, 672 (E.D. Penn. 1980).

## S U M M A R Y

In preparing a redistricting plan, the legislature need not take into account the number of qualified voters in senatorial

districts as required by article III, section 25 of the Texas Constitution, since that requirement was struck down by a federal court.

An apportionment plan may split counties into two or more senatorial districts when an alternative plan could be drawn maintaining county integrity.

A county need not be given the maximum number of full senatorial districts which can be contained within it.

An apportionment plan may combine primarily rural counties with urban areas in a single senatorial district.

The legislature may reapportion on the basis of the recent census figures.

No law requires the legislature to consider in drafting its reapportionment plan the recent election return data required to be submitted to the Department of Justice under the Voting Rights Act.

A reapportionment plan need not protect the districts of incumbents, nor must it guarantee any group legislative seats in proportion to its voting strength.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY, III
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moelinger