NATIONAL ASSOCIATION OF INDE-PENDENT INSURERS, Alliance of American Insurers, Texas Farm Bureau Mutual Insurance Company, Farmers Texas County Mutual Insurance Company, Texas Farmers Insurance Company, Mid–Century Insurance Company, Truck Insurance Exchange, Fire Insurance Exchange, Farmers Insurance Exchange, Texas Life Insurance Association, and Texas Legal Reserve Officials Association, Appellants,

v.

TEXAS DEPARTMENT OF INSURANCE; State Board of Insurance; Robert Hunter, Commissioner of Insurance; Deece Eckstein; Allene Evans; Claire T. Korioth; and Office of Public Insurance Counsel, Appellees.

No. 3–94–181–CV.

Court of Appeals of Texas, Austin.

Nov. 16, 1994.

Rehearing Overruled Dec. 21, 1994.

---

Dudley D. McCalla, Heath, Davis & McCalla, P.C., Mr. Fred B. Werkenthin; Small, Craig & Werkenthin, Austin, for Nat. Ass'n of Independent Insurers, et al.

Dan Morales, Atty. Gen., Stephen F. Morris, John M. Hohengarten, Asst. Attys. Gen., Austin, for Texas Dept. of Ins., State Bd. of Ins., and Com'r of Ins.

Mark L. Kincaid, Office of Public Ins. Counsel, Austin, for appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

Appellants [1] ("Insurers") challenged the validity of two rules adopted by the State Board of Insurance. Appellees Texas Department of Insurance, State Board of Insurance, and the Office of Public Insurance Counsel [2] (collectively the "Board") defended the validity of the rules. Following a bench trial, the trial court upheld the two rules. We will affirm the trial court's judgment.

## THE CONTROVERSY

The two rules at issue in the instant cause are referred to by the parties as Rule 1000 and Rule 1003, which the Board adopted on August 31, 1993. *See* 28 Tex.Admin.Code §§ 21.1000, .1003 (1994) (hereinafter Rule 1000 and Rule 1003, respectively). Rule 1000 [3] was submitted in June of 1993 and published in the Texas Register on July 27, 1993. The Board designed Rule 1000 to prevent insurance companies from "blacklisting" consumers merely because they previously had been rejected by another insurer.

Rule 1003,[4] published in the Texas Register on July 27, 1993, prohibits insurers from refusing to sell insurance or denying a preferred rate to a consumer because the consumer owns only one automobile. Before the rule was adopted, Allstate Indemnity Company, a preferred company, only insured multi-car owners and retired single-car owners. The Department had received complaints from single-car families who could not obtain preferred rates. Rule 1003 also eliminates the practice of "tying," i.e., conditioning the issuance of an automobile policy on the consumer's purchase of another policy from the same company.

The Insurers raised numerous challenges to the rules before the trial court, and the Board responded that it had acted within its statutory authority under article 21.21. *See* Tex.Ins.Code Ann. art. 21.21, §§ 1(a), 13(a) (West 1981). The trial court rendered judg-

1. The appellants are the National Association of Independent Insurers, Alliance of American Insurers, Texas Farm Bureau Mutual Insurance Company, Farmers Texas County Mutual Insurance Company, Texas Farmers Insurance Company, Mid–Century Insurance Company, Truck Insurance Exchange, Fire Insurance Exchange, Farmers Insurance Exchange, Texas Life Insurance Association, and Texas Legal Reserve Officials Association.

2. Other appellees include Deece Eckstein, Allene Evans, Claire T. Korioth, and Robert Hunter, Commissioner of Insurance.

3. Rule 1000, "Prohibition Against Insurer's Refusal To Insure Based on the Underwriting Decision of Another Company," provides:

> (a) The fact that another insurer canceled, non-renewed, or refused to insure an applicant shall not be a reason, in whole or in part, for an insurer or agent writing or offering personal automobile, residential property, life, accident, or health insurance to refuse to insure or submit an application or binder or conditional receipt for that applicant. An insurer may base its decision whether to insure an applicant on the same factor on which another insurer made its adverse decision if that insurer would have based its decision on that factor without knowledge of the previous insurer's actions.

> (b) The fact that an applicant was previously insured by a county mutual or surplus lines insurer shall not be a reason, in whole or in part, for an insurer or agent writing or offering personal automobile or residential property insurance to refuse to insure or submit an application or binder or conditional receipt for that applicant.
>
> (c) The failure to comply with this rule shall constitute unfair competition and unfair practices under the Insurance Code, Article 21.21, and shall be subject to the provisions thereof. This rule does not prohibit an insurer or agent from asking if another insurer canceled, non-renewed, or refused to insure the applicant.

4. Rule 1003, "Prohibition against Using Number of Vehicles Insured or Number of Policies Purchased in Issuing, Renewing, or Pricing Personal Auto Insurance," states:

> An insurer or agent shall not condition the issuance, renewal, price, continuation, or amount of coverage of personal automobile insurance on the number of vehicles to be insured on the policy or on the purchase from the insurer or any affiliated insurer of any other policy or policies. This rule does not preclude the application of a type of discount as provided in a rate manual approved by the Texas Department of Insurance or the conditioning of the sale of any umbrella or excess coverage policy on the purchase of an underlying policy.

ment upholding Rules 1000 and 1003, from which the Insurers appeal. The Insurers allege that the district court erred in four ways: (1) by upholding Rule 1000; (2) by upholding Rule 1003; (3) by failing to hold article 21.21 of the Insurance Code unconstitutional; and (4) by failing to hold that Rules 1000 and 1003 exceeded the statutory authority of the Board. The Board raises one cross-point of error, arguing that the trial court erred by excluding evidence the Board considered in promulgating Rules 1000 and 1003.

## DISCUSSION

### Statutory Authority of the Board

■ Because we have determined that the Board's statutory authority to promulgate these rules is a threshold issue in the instant cause, we address it first. In their fourth point of error, the Insurers contend that the Board exceeded its statutory authority because it failed to adopt any rules or criteria by which it determines whether any given practice or act is "unfair." *See* Tex.Ins.Code Ann. art. 21.21, § 13(f)(2) (West 1981). The Insurers argue that article 21.21 does not give the Board authority to define as "unfair" other practices than those enumerated in the statute, or, alternatively, that the Board has no authority to promulgate rules under article 21.21 without initially issuing standards for determining whether practices are unfair. The Board responds that the statutory language and case law support its contention that it acted within its statutory authority.

■ "[A]n agency can adopt only such rules as are authorized by and consistent with its statutory authority." *Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex.1992). Agency rules are presumed valid and the burden of demonstrating their invalidity is on the challenging party. *Hollywood Calling v. Public Util. Comm'n*, 805 S.W.2d 618, 620 (Tex.App.—Austin 1991, no writ); *Browning–Ferris, Inc. v. Texas Dep't of Health*, 625 S.W.2d 764, 767 (Tex. App.—Austin 1981, writ ref'd n.r.e.). A rule is a valid exercise of statutory authority if its provisions are in harmony with the general objectives of the statute. *Gerst v. Oak Cliff*

*Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968); *Chrysler Motors Corp. v. Texas Motor Vehicle Comm'n*, 846 S.W.2d 139, 141 (Tex.App.—Austin 1993, no writ).

Article 21.21 provides that the Board "is authorized to promulgate and may promulgate and enforce reasonable rules and regulations and may order such provision as is necessary in the accomplishment of the purposes of this article...." Tex.Ins.Code Ann. art. 21.21, § 13(a) (West 1981). The Board asserts that this broad grant of authority empowers it to declare certain practices unfair, in addition to those practices that the statute specifically prohibits. *See* Tex.Ins. Code Ann. art. 21.21, § 4 (West Supp.1994). The Insurers respond that the supreme court has recently held section 4 to be an "exclusive list of statutory unfair or deceptive acts or practices in the business of insurance." *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 147 (Tex.1994). Therefore, argue the Insurers, since Rules 1000 and 1003 are not based on any of the practices specifically enumerated in the statute, the Board has exceeded its statutory authority. The Insurers ignore, however, the supreme court's analysis in *Watson:*

> To have a private cause of action for alleged unfair claim settlement practices under article 21.21, section 16, such practices must be declared unfair or deceptive acts or practices in the business of insurance in section 4 of article 21.21, [or] *the rules and regulations of the State Board of Insurance adopted* under art. 21.21....

*Id.* (emphasis added). The court then proceeded to note that neither section 4 *nor any Board order* had declared the claim settlement practices at issue to be unfair or deceptive acts under article 21.21. *Id.* at 147–48. The supreme court thus impliedly recognized the Board's power to determine and prohibit unfair practices.

■ Section 1 provides additional support for the proposition that the Board was intended to have broad authority to determine which practices are unfair. The purpose of article 21.21 is to regulate trade practices in the business of insurance by "defining, or *providing for the determination of all such practices*" that constitute unfair acts or prac-

tices. Tex.Ins.Code Ann. art. 21.21, § 1 (West 1981 & Supp.1994) (emphasis added). Section 16 also indicates the legislative intent to authorize the Board to declare practices "unfair" by providing for a private cause of action for persons injured because another person has engaged in an act or practice "declared in Section 4 of this article or *in rules or regulations lawfully adopted by the Board* under this article to be unfair methods of competition and unfair or deceptive acts...." *Id.* at § 16(a) (emphasis added). We conclude that article 21.21 grants the Board statutory authority to promulgate rules declaring practices unfair and that Rules 1000 and 1003 are in harmony with the general statutory objective to prevent unfair practices. *See Gerst,* 432 S.W.2d at 706.

■ The Insurers further contend, however, that the Board exceeded its statutory authority by failing to initially adopt criteria for determining whether a given practice or act is unfair. The Insurers argue that in the absence of any standards governing the determination of unfairness, the Board has unlimited discretion to proscribe any insurance company or agent activity that it deems unfair. The Board argues that neither article 21.21 nor prior case law requires it to promulgate standards before it can declare a practice unfair. *See* Tex.Ins.Code Ann. art. 21.21 (West 1981 & Supp.1994); *Watson,* 876 S.W.2d at 147 (noting that the Board has authority to declare practices "unfair"); *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 133 (Tex.1988) (stating that section 16 prohibits insurers from engaging in practices declared to be unfair or deceptive by a State Board of Insurance rule or regulation). We agree with the Board's assertion that section 13(f) provides the standards and criteria with which the Board must comply when exercising its statutory authority. Tex. Ins.Code Ann. art. 21.21, § 13(f) (West 1981).[5] Article 21.21 does not require, as a preliminary matter, the promulgation of standards under which the Board will declare a practice unfair. Because the Board did not exceed its statutory authority in promulgating the rules, we overrule the Insurers' fourth point of error.

■ In a related point of error, the Insurers contend that article 21.21 is unconstitutional as applied because it does not require the Board to develop standards or criteria for determining when a practice is "unfair." They argue that legislative statutes are unconstitutionally vague if they fail to provide reasonably specific criteria. *See Texas Antiquities Comm. v. Dallas County Community College Dist.,* 554 S.W.2d 924, 927–28 (Tex.1977) (failure to develop standards for determining "buildings ... and locations of historical ... interest" rendered Antiquities Code provision unconstitutionally vague). The Board concedes that the statute delegates broad authority, but asserts that this broad delegation is necessary to prevent unforeseen unfair practices that the Legislature cannot conveniently address. *Housing Auth. of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 87 (1940); *see Lone Star Gas Co.,* 844 S.W.2d at 689 (statutes delegating authority are not invalid because of failure to include specific details). The Legislature may delegate rulemaking authority to an agency as long as it does so in a statute that declares the public policy of the state and the primary standards the agency must observe. *Brown v. Humble Oil & Ref. Co.,* 126 Tex. 296, 83 S.W.2d 935, 940–41 (1935). The supreme court, in holding that the phrase "not worthy of public confidence" was a sufficient standard, noted that "while many elements ... enter into the conclusion that one is unworthy of public confidence, it does not necessarily follow that an administrative board must first establish detailed rules to carry out its statutory duty...."

---

**5.** Section 13(f) declares that the Board's action may be invalidated if it:

(1) violates a constitutional or state statutory provision;
(2) exceeds the statutory authority of the Board;
(3) is arbitrary or capricious or characterized by abuse of discretion or unwarranted exercise of discretion;

(4) is so vague that it does not establish sufficiently definite standards with which conduct can be conformed;
(5) is made on unlawful procedure; or
(6) is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record as submitted.

*Jordan v. State Bd. of Ins.,* 160 Tex. 506, 334 S.W.2d 278, 280 (1960). The supreme court has specifically held that the Legislature may constitutionally delegate authority to prohibit insurance policy forms that are "unjust, *unfair,* inequitable, misleading, [or] deceptive." *Key W. Life Ins. Co. v. State Bd. of Ins.,* 163 Tex. 11, 350 S.W.2d 839, 848–50 (1961) (emphasis added). We conclude that article 21.21 passes constitutional muster under *Key* and *Jordan.* Like the statute at issue in *Key,* article 21.21 utilizes a standard of "unfairness" to guide the Board in the exercise of its authority.[6] The Board's failure to establish standards of unfairness does not make article 21.21 unconstitutional as applied. We overrule the Insurers' third point of error.

## Validity of the Rules Under Article 21.21

In their first and second points of error, the Insurers argue that the district court erred by upholding Rules 1000 and 1003. The Insurance Code specifies the circumstances under which a rule can be invalidated. Tex.Ins.Code Ann. art. 21.21, § 13(f) (West 1981).[7] The Insurers argue that both of the rules violate various provisions of section 13(f).

### Challenge to the Rules as Arbitrary and Capricious Under Section 13(f)(3)

■ The Insurers initially contend that Rules 1000 and 1003 are unnecessary, unreasonable, arbitrary, and capricious under section 13(f)(3). Tex.Ins.Code Ann. art. 21.21, § 13(f)(3) (West 1981). First, they argue that the Board failed to introduce any evidence of the "blacklisting" that Rule 1000 prohibits, making the rule unreasonable and unnecessary. *See id.* at § 13(a). The Insurers similarly contend that Rule 1003 violates section 13(f)(3) because, although there was evidence that the practice of refusing to issue preferred rates to single-car owners was occurring, the Board presented no evidence

detailing how this practice injured consumers.

■ The Board responds that neither the APA nor article 21.21 requires the Board to refrain from acting until consumers have been harmed. In *Bullock v. Hewlett–Packard Co.,* 628 S.W.2d 754, 756 (Tex.1982), the supreme court noted that an administrative rule need not be "wise, desirable, or even necessary," so long as it is based on some legitimate position of the administrative agency involved. Courts will presume that facts exist which justify the rule's promulgation. *Id.* The burden of establishing the invalidity of an act is upon the party who is attacking it. *Smith v. Craddick,* 471 S.W.2d 375, 378 (Tex.1971).[8] By arguing that the Board presented insufficient evidence to support the rules, the Insurers misconstrue the nature of the burden in a challenge to administrative rules. The Insurers have the burden of demonstrating that the rules are invalid and they offered insufficient evidence to rebut the presumption of validity. Under the standards articulated above, this fact alone suffices to overrule the Insurers' claim.

■ As additional support, the Board argues that the mere possibility of an unfair practice provides adequate justification for the Board to act. The Board contends that article 21.21 does not prohibit the Board from taking prophylactic measures to prevent unfair practices, citing a provision that authorizes the Board to grant hearings for any act or practice that "has been or *could be* false, misleading or deceptive...." Tex.Ins. Code Ann. art. 21.21, § 13(b) (West 1981). We agree. The Board has the authority to promulgate such rules as *it* deems necessary to advance the objectives of article 21.21, and it need not passively wait for harm to occur before it enacts regulations. *Id.* at § 13(a). We conclude that the rules are reasonable and necessary.

---

6. In ruling that the statute at issue in *Texas Antiquities* was unconstitutionally vague, the supreme court specifically refused to overrule or disapprove *Key. Texas Antiquities,* 554 S.W.2d at 928.

7. *See supra* note 5.

8. Although *Smith* involved a legislative act, the supreme court has held that administrative rules should be construed in the same manner as statutes. *Lewis v. Jacksonville Bldg. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976).

■ The Insurers challenge several provisions of Rule 1000: the "in whole or in part" language; the binding requirement; and the rule's "escape clause." Rule 1000 provides: "The fact that another insurer canceled, non-renewed, or refused to insure an applicant shall not be a reason, *in whole or in part,* for an insurer ... to refuse to insure...." 28 Tex.Admin.Code § 21.1000(a) (1994) (emphasis added). Section (b) prohibits an insurer from considering the fact that an applicant has previously been insured by a county mutual or surplus line carrier as a reason, *in whole or in part,* for refusing the applicant. *Id.* at § 21.1000(b). The language "in whole or in part" does not render Rule 1000 arbitrary and capricious. To allow insurers to rely on the improper factors "in part" would emasculate the statute because it would protect insurers who use improper grounds in reaching their decisions. Eliminating the "in part" language would protect an insurer who relies, however slightly, on some proper ground for denial. The Board acted reasonably by refusing to allow insurers access to such an easily manufactured defense. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 693 (Tex.1979) (cannot construe a statute in a way that emasculates it or provides an easily manufactured defense).

■ The Insurers' principal concern over the "in part" language appears to be that the rule's wording exposes insurers to the risk of treble damage lawsuits and strict administrative penalties since an agent's mere consideration of a previous cancellation may be sufficient to impose liability. We agree that the rule envisions this result, but we disagree that this potential result renders the rule arbitrary and capricious. An agency rule is arbitrary and capricious only when it lacks a legitimate reason to support it. *Bullock,* 628 S.W.2d at 757. The availability of treble damage lawsuits is an insufficient reason for this Court to hold Rule 1000 arbitrary and capricious, given that the statute specifically authorizes this type of suit. Tex.Ins.Code

Ann. art. 21.21, § 16 (West 1981). Treble damage suits provide individuals not only with the means to discourage deceptive or unfair practices, but also with the incentive to do so. *Woods v. Littleton,* 554 S.W.2d 662, 670 (Tex.1977). Rule 1000, with its threat of treble damage lawsuits, provides insurers with a strong disincentive to rely on other companies' denials in making their decisions to insure.

The Insurers also argue that the "binding requirement" of Rule 1000 renders the rule invalid. Agents with binding authority may issue insurance before submitting an application to the insurance company's underwriters. The Insurers contend that Rule 1000 will prevent binding agents from obtaining necessary information concerning risk factors in the applicant's background. The Board maintains that a binding agent will not violate the rule if he or she refuses to bind because of *a lack of sufficient information* to determine whether the applicant is disqualified under the company's underwriting guidelines. Although we are not bound by the Board's interpretation, we cannot conclude that it is legally incorrect. *See State ex rel. Employers Mut. Liab. Co. v. United Bonding Ins. Co.,* 450 S.W.2d 689, 692 (Tex. Civ.App.—Austin 1970, no writ). We refuse to assume that binding agents will be unable to obtain necessary information for fear of violating Rule 1000. The Insurers must wait for an actual dispute in which the Board has implemented the interpretation they urge.

■ The Insurers contend that Rule 1000's "escape clause" is unconstitutional, unreasonable, arbitrary, and capricious.[9] The Insurers raise two main challenges to the clause: (1) it reduces competition among companies because it effectively requires identical underwriting guidelines for all companies; and (2) the clause violates equal protection because it applies only to insurers, and not to agents.

The Insurers' first challenge is based on a misconstruction of Rule 1000. They argue that the clause protects an insurer *only* if its

9. The "escape clause" provides:
An insurer may base its decision whether to insure an applicant on the same factor on which another insurer made its adverse decision if that insurer would have based its decision on that factor without knowledge of the previous insurer's actions.
28 Tex.Admin.Code § 21.1000(a) (1994).

decision to decline is based on the identical factor the previous company used, making the insurer liable for violation if it declines based on a different factor. The Board, however, offers a much more cogent interpretation:

> If it is legitimate to deny insurance to someone with six tickets, it is certainly legitimate to reject someone with nine tickets.... With the rule, the second insurer simply has to ask about or check the applicant's driving record. The denial would be supported by the second insurer's own guidelines.... Thus, there would be no need to apply either the rule or the escape clause.

We agree with the Board that the language of Rule 1000 supports this interpretation. At trial, the Board presented evidence that the escape clause was added to the rule after negotiations with industry representatives in response to industry concerns that the use of identical underwriting guidelines by different companies would expose them to liability. The Rule does not compel insurers to use the same guidelines; it requires that an insurer adhere to its *own* guidelines.

■ The Insurers also attack the escape clause because it denies agents the protection insurers receive. Both agents and insurers are subject to the penalties of the rule, but the escape clause exonerates only insurers. Insurance companies, however, act only through their agents. *State Farm Fire & Casualty Co. v. Gros*, 818 S.W.2d 908, 912 (Tex.App.—Austin 1991, no writ). Although we agree with the Insurers that this language could have been better drafted, poor drafting is an insufficient basis for invalidating a rule. *Massachusetts Indem. & Life Ins. Co. v. State Bd. of Ins.*, 685 S.W.2d 104, 114 (Tex.App.—Austin 1985, no writ). The failure to specifically include agents in the escape clause does not make Rule 1000 arbitrary and capricious.

■ The Insurers also attack Rule 1003 as arbitrary and capricious, arguing that there was no evidence that the prohibited practices were harming consumers. The Insurers rely on *Commercial Standard Insurance Co. v. Board of Insurance Commissioners*, 34 S.W.2d 343, 345 (Tex.Civ.App.—Aus-

tin 1931, writ ref'd), for the proposition that insurers have a right to insure only preferred risks and to reject hazardous ones. Although the Insurers correctly assert that companies are free to reject applicants for numerous reasons, they ignore *Commercial Standard*'s reliance on the fact that the contested regulation was outside the scope of the Insurance Commissioners' authority. *Id.* at 344. In contrast, article 21.21 expressly grants the Board authority to promulgate reasonable rules necessary to accomplish the purposes of article 21.21. Tex.Ins.Code Ann. art. 21.21, § 13(a) (West 1981). The Board has reasonably concluded that the number of vehicles owned is not a true test of risk. Rule 1003 does not prevent insurers from accepting and rejecting risks; it merely prohibits the use of inaccurate substitutes, such as the number of cars owned, for real risk factors. We conclude that the "number of cars" provision is not arbitrary and capricious.

■ The Insurers also challenge the rule's "tie-in" provision, which prohibits insurers from conditioning automobile insurance coverage on the purchase of other policies. Although industry representatives admitted at trial that the practice of tying was unfair, the Insurers contend that the Board failed to justify why it targeted only *automobile* insurance "tie-ins." The Board responds that automobile insurance was singled out because it is the only type of insurance that is statutorily required, giving the Board heightened interest in ensuring fairness in the auto insurance market. Tex.Rev.Civ. Stat.Ann. art. 6701h (West Supp.1994). An agency decision is not arbitrary and capricious if a rational connection exists between the facts and the decision of the agency. *Starr County v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). We therefore conclude that the statutory requirement of automobile insurance provides a rational connection for the Board's differential treatment of automobile insurance tie-ins.

■ The Insurers also assail Rule 1003 as unjustified because it will not eliminate the practice of determining the price of in-

surance on the basis of the number of vehicles to be insured on the policy. The Insurers argue that Board Rule 74D, which authorizes a fifteen percent discount for multi-car owners, already determines the price of automobile insurance on the basis of the number of vehicles to be insured. Texas Auto Rules Rating Manual, § 4, Part 74D. The Insurers contend that the Board's promulgation of Rule 74D indicates that multi-car owners are a better risk than single-car owners, and therefore it is appropriate for companies to write only the preferred risks of multi-car owners. The Board argues that the two rules are consistent because they address different things. We agree. Rule 74D allows a discount for insuring multiple cars because of the perceived economies of scale incident to writing one policy for multiple cars; Rule 1003 prohibits the use of proxies for real risk factors. Rule 1003's text expressly acknowledges that it is subject to any "type of discount as provided in a rate manual approved by the Texas Department of Insurance...." 28 Tex.Admin.Code § 21.1003 (1994). We conclude that the existence of Rule 74D does not render Rule 1003 arbitrary and capricious.

### Procedural Challenge to Rules 1000 and 1003 under the APA and § 13(f)(5)

■ The Insurers argue that Rule 1000 and Rule 1003 violate various provisions of the Administrative Procedure Act ("APA"), and are therefore invalid under article 21.21. *See* Tex.Ins.Code Ann. art. 21.21, § 13(f)(5) (West 1981) (invalidating a rule if made on unlawful procedure). Under the APA, an agency must publish notice of a proposed rule and include certain information in its order adopting the rule. Tex. Gov't Code Ann. §§ 2001.024, .033 (West 1994). An administrative rule is valid only if it is adopted in "substantial compliance" with the APA. *Id.* at § 2001.035(a). Substantial compliance does not mean literal and exact compliance with every provision of a statute; compliance with the essential requirements of the statute suffices. *Methodist Hosps. of Dallas v. Texas Indus. Accident Bd.,* 798 S.W.2d 651, 654 (Tex.App.—Austin 1990, writ dism'd w.o.j.).

■ The Insurers first challenge the adequacy of the Board's statement of statutory authority in Rule 1000's initial notice. The notice of a proposed rule must include "a concise explanation of the particular statutory or other provisions under which the rule is proposed...." Tex. Gov't Code Ann. § 2001.024(3)(A) (West 1994). In Rule 1000's initial notice, the Board's statement of statutory authority contained article 21.21 and eleven other statutory provisions, but the Board subsequently conceded at trial that only article 21.21 authorized the rule. The Insurers contend that the inclusion of the eleven inapplicable statutes invalidates both the notice and the rule because it indicates that the Board considered irrelevant factors in promulgating Rule 1000. *See Cities of Abilene v. Public Util. Comm'n,* 854 S.W.2d 932, 937 (Tex.App.—Austin 1993, no writ).

■ The Board responds that the inclusion of inapplicable authority is irrelevant because Rule 1000's preamble included a reference to article 21.21, thus putting the public on notice. Tex. Gov't Code Ann. § 2001.024(3)(A) (West 1994). Under *Methodist Hospitals,* we first consider the legislative objectives underlying this provision of the APA. *Methodist Hosps.,* 798 S.W.2d at 654. The purpose of the statement of statutory authority is to notify the public of the proposed rulemaking, to inform them of the contents of the proposed rule, and to give them sufficient information to determine whether protection of their interests requires them to participate. *State Bd. of Ins. v. Deffebach,* 631 S.W.2d 794, 800 (Tex.App.—Austin 1982, writ ref'd n.r.e.); Ron Beal, *The Scope of Judicial Review of Agency Rulemaking: The Interrelationship of Legislating and Rulemaking in Texas,* 39 Baylor L.Rev. 597, 657 (1987). Mere technical defects that do not result in prejudice to a person's rights or privileges should not be grounds for invalidation of a rule. Bob E. Shannon & James B. Ewbank, II, *The Texas Administrative Procedure and Texas Register Act Since 1976—Selected Problems,* 33 Baylor L.Rev. 393, 430 (1981). One commentator has noted that "the mere fact the agency is going to proceed with the proposed rulemaking is enough to motivate one to act.... The omission of [the statement of

statutory authority] alone, should not prevent a court from finding that the agency has substantially complied with the notice requirement." Beal, *supra,* at 659. In the notice, the Board clearly relied on article 21.21 as one basis for the rule, thereby giving the public sufficient information concerning the statutory basis for the rule. We conclude that the Board substantially complied with the APA by including article 21.21 in the initial notice.

■■■■ The Insurers next contend that Rule 1000 and Rule 1003 lack the "reasoned justification" required by the APA. *See* Tex. Gov't Code Ann. § 2001.033(1) (West 1994). The APA requires that an agency order adopting a rule include: (1) a summary of comments from interested parties; (2) a restatement of the rule's factual bases; and (3) the reasons why the agency disagrees with party submissions and proposals. *Id.; Chrysler Motors,* 846 S.W.2d at 143. The agency order must present the agency's justification in a "relatively clear, precise, and logical fashion." *Railroad Comm'n v. Arco Oil & Gas Co.,* 876 S.W.2d 473, 492 (Tex. App.—Austin 1994, writ requested). An agency must demonstrate the factual basis underlying an administrative rule; we will not presume that one exists. *Id.* at 491. In reviewing the adequacy of the reasoned justification, we use an arbitrary and capricious standard. *Id.* at 490–91. Under this standard, a rule is invalid only if the agency omitted from consideration a factor the legislature intended the agency to consider, included an irrelevant factor in its consideration, or reached a completely unreasonable result after weighing the relevant factors. *Statewide Convoy Transp. v. Railroad Comm'n,* 753 S.W.2d 800, 804 (Tex.App.—Austin 1988, no writ).

■■■ The Insurers argue that the order adopting Rule 1000 violates the reasoned justification requirement because the order provides no factual basis for the rule and no explanation of why the prohibited activities are unfair. In the order adopting Rule 1000, the Board provided:

> Insurers should, on an independent basis, determine whether to insure an applicant in accordance with their individual under-

writing guidelines. The fact that another insurer has declined to write, canceled or nonrenewed a policy for an applicant should not in whole or in part be the basis for an insurer declining to write the applicant. Such action is anti-competitive and results in the blacklisting of some consumers from the insurance market. This section will ensure that the possibility of unfair competition and unfair practices do not occur in the marketplace.

The Board responds that this justification satisfies the APA requirement. We agree. The reasoned justification requirement is not intended to be applied clause by clause but rather to the rule as a whole. *Chrysler Motors,* 846 S.W.2d at 143. To do otherwise would, in essence, impose a requirement for detailed findings of fact and conclusions of law, which the Legislature does not require under the APA. *Id.* The justification at issue here offers a factual basis for the rule's necessity and explains why the rule is a rational response, thus securing the legislative objectives that underlie article 21.21 by providing a logical nexus between the problems the Board perceived and Rule 1000. *See Arco,* 876 S.W.2d at 493 (justification must provide a logical nexus between the problems giving rise to the agency rule and the agency's response). Since Rule 1000 reaches a result that is not completely unreasonable, and the Insurers have failed to show that the Board considered improper factors or failed to consider essential factors, the Board's factual basis is not arbitrary and capricious. *See Statewide Convoy,* 753 S.W.2d at 804. The order adopting Rule 1000 satisfies the reasoned justification requirement of the APA.

■■■ The Insurers also challenge the reasoned justification for Rule 1003:

> Section 21.1003 will result in eliminating any practice of determining the company, coverage, or price of personal automobile insurance on the basis of the number of vehicles to be insured on the policy. In addition, this section will also eliminate the practice of tying the sale of a personal automobile insurance to another policy, except in specific instances that such tie-in is allowed by the rule. This will result in

greater fairness in the personal automobile insurance marketplace and greater availability and affordability of personal automobile insurance.

The Insurers specifically complain that refusing to insure single-car consumers is reasonable, and that the Board failed to demonstrate why the practice should be prohibited. Under the analysis of *Arco* and *Statewide Convoy*, we must determine whether the justification is arbitrary and capricious. The Board stated that the discriminatory practices of offering preferred rates and tying had reduced the availability of insurance; the rule solves this problem by prohibiting these practices, thus making auto insurance more affordable and more available. The record reflects that at least one preferred company, Allstate Indemnity Company, generally refused single-car owners, yet accepted retirees with only one vehicle. This evidence supports the Board's position that the number of cars owned is an inaccurate proxy for real risk factors. The Insurers have not shown that the Board considered improper factors, omitted consideration of essential factors, or reached an unreasonable result in adopting the rule. *See Statewide Convoy*, 753 S.W.2d at 804. The Board has substantially complied with the APA because it has fulfilled the legislative objective of eliminating unfair practices that underlies article 21.21 in terms that are concise and specific. *Methodist Hosps.*, 798 S.W.2d at 654. We reject the Insurers' argument that Rule 1003 lacks a reasoned justification.

■■■■■■ The Insurers next challenge the sufficiency of the Board's response to interested parties' comments, arguing that the Board often responded to commentators' interpretations of Rules 1000 and 1003 with the statement that it disagreed with the interpretation. The APA requires a state agency to provide interested persons a reasonable opportunity to submit their views before it adopts a rule, and to consider fully all written and oral submissions about the proposed rule. Tex. Gov't Code Ann. § 2001.029(a), (c) (West 1994). In its order adopting a rule, an agency must specify the reasons why it "dis-

agrees with party submissions and proposals." *Id.* at § 2001.033(1)(C). One essential objective of the reasoned justification requirement is "to ensure the agency fully considered the comments submitted...." *Arco*, 876 S.W.2d at 491 (quoting Ron Beal, *Challenging the Factual Basis and Rationality of a Rule Under APTRA*, 45 Baylor L.Rev. 1, 23 (1993) [hereinafter Beal II]). The agency is required to demonstrate its assimilation and analysis of the comments received by various interested parties. Beal II, *supra*, at 24.

■■■■■ In determining whether the response to comments was adequate, we should consider the adequacy of the comments as a whole rather than analyzing the adequacy of each individual response. *Chrysler Motors*, 846 S.W.2d at 143. Although the Board simply expressed its disagreement in response to some of the comments to Rules 1000 and 1003, it responded to other comments in a much more detailed manner.[10] The orders adopting Rules 1000 and 1003, viewed as a whole, provided sufficient responses to industry comments. Under the standard articulated in *Chrysler Motors*, 846 S.W.2d at 143, we conclude that Rules 1000 and 1003 satisfy the requirements of the APA, and are therefore valid under article 21.21. Tex. Gov't Code Ann. § 2001.033 (1994); Tex.Ins.Code Ann. art. 21.21, § 13(f)(5) (West 1981).

### Constitutional Challenge Under § 13(f)(1)

■■■■■ The Insurers argue that the rules are void for vagueness, in violation of section 13(f)(1) of article 21.21. Tex.Ins.Code Ann. art. 21.21, § 13(f)(1) (West 1994) (invalidating a rule if it violates a constitutional provision). A regulation violates the constitutional guarantee of due process if it requires the doing of an act so vague that persons of common intelligence must guess at its meaning and differ as to its application. *Texas Liquor Control Bd. v. The Attic Club*, 457 S.W.2d 41, 45 (Tex.1970); *Browning–Ferris*, 625 S.W.2d at 765. The appropriate standards for determining vagueness are whether: (1) the statute conveys a sufficiently definite warning; (2) a person of common

---

**10.** The Board also notes that Rule 1000 was amended in response to industry comments, demonstrating the Board's attention to the insurance industry's concerns.

intelligence must guess at its meaning; (3) a person of ordinary intelligence runs a substantial risk of miscalculation in seeking to comply with the statute; and (4) an ordinary person could sufficiently understand and comply with the statute. *See Massachusetts Indem.*, 685 S.W.2d at 114. To ascertain whether a rule is unconstitutionally vague, we must determine whether a person reading the rule in good faith would misunderstand what the rule was intended to prohibit. *Id.* at 115. The ideas embodied in a rule must be reasonably clear in order to overcome a vagueness challenge. *Jordan*, 334 S.W.2d at 280.

The Insurers argue that two aspects of Rule 1000 are unconstitutionally vague: the rule does not clarify whether unwritten guidelines receive protection under the escape clause or whether agents are exonerated by the clause. We disagree that these factors render Rule 1000 unconstitutionally vague. Under the articulated standards for vagueness, we conclude that Rule 1000 conveys a clear warning against the prohibited conduct and that an ordinary person could understand and comply with it. A person reading the rule in good faith would not misunderstand it. *Massachusetts Indem.*, 685 S.W.2d at 114–15. We reject the Insurers' contention of vagueness.[11]

Having reviewed the various challenges the Insurers have raised to the validity of Rules 1000 and 1003 under article 21.21, section 13(f), we conclude that the trial court did not err in upholding these rules. We therefore overrule the Insurers' first and second points of error.

## CONCLUSION

Having overruled all of the Insurers' points of error, we find it unnecessary to discuss the Board's cross-point of error concerning the trial court's exclusion of the evidence the Board considered in promulgating

Rules 1000 and 1003. The trial court's judgment is affirmed.

CARROLL, C.J., not participating.

---

11. In their brief, the Insurers did not specify whether Rule 1003 was also unconstitutionally vague, although they argue it is vague and confusing. Because the Insurers have not indicated what words, phrases, or terms are vague, we conclude that they have not demonstrated with particularity how the rule is unconstitutionally vague, and therefore have not preserved this point for review. *See Helle v. Hightower*, 735 S.W.2d 650, 654 (Tex.App.—Austin 1987, writ denied).