TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00748-CV






Outdoor Systems, Inc., as Successor in Interest to Jules Lauve, Jr., Inc., Appellant



v.



Texas Department of Transportation, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 97-03643, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING 







 On June 23, 1994, appellee Texas Department of Transportation, by and through
the Texas Transportation Commission (collectively "TxDOT"), canceled three sign permits held
by Jules Lauve, Jr., Inc. ("Lauve"). The cancellation of two of the permits was affirmed both
at the administrative level and by the district court. (1) Appellant Outdoor Systems, Inc. ("Outdoor
Systems"), as Lauve's successor in interest, appeals those cancellations to this Court. We will
affirm.


BACKGROUND


 We take our recitation of the background facts from uncontested findings in the
agency's order. By letter dated June 23, 1994, the Houston TxDOT office notified Lauve that
permit numbers 061404 (sign one) and 061437 (sign two) were immediately canceled. The signs
covered by these permits existed at the time outdoor advertising regulations went into effect and
were therefore excused from complying with current regulations as "grandfathers." The signs
are located in "nonconforming locations" for which new permits may not be issued. 

 Under the rules governing this case, new permits are required when signs are
replaced. See 11 Tex. Reg. 903, 905 (1986), since amended, (hereinafter 43 Tex. Admin. Code
§ 21.142). (2) In addition, permits may be canceled if "the sign subject to the permit is acquired by
the state, is removed, or is not maintained . . . ." 16 Tex. Reg. 5730, 5732 (proposed) and 16
Tex. Reg. 6939 (adopted) (1991), since amended, (hereinafter 43 Tex. Admin. Code § 21.150(h)).

 A storm damaged the signs in May 1993. Before the storm, the signs were made
primarily of wood. Following the storm, the signs were "rebuilt" primarily out of steel. After
receiving the cancellation notice, Lauve requested and received a contested case hearing before
an administrative law judge (ALJ) at the State Office of Administrative Hearings. 

 By order dated December 19, 1996, TxDOT adopted the findings of fact and
conclusions of law from the ALJ's proposal for decision ("PFD"). The order applies common,
everyday meanings to the terms "remove" and "repair" and concludes that "the tests for removing
a sign and for normal maintenance [which is defined in terms of "repair"] are not the same." (3) 
The order also concludes that the word "removed" as used in the sign regulations is not
unconstitutionally vague, that the signs were removed, and that cancellation of the permits should
be affirmed. See id. 

 In April 1997, Lauve filed a suit for judicial review of the order in Travis County
district court. See Tex. Gov't Code Ann. §§ 2001.171-.178 (West Supp. 2000). The district
court affirmed the agency's order, holding that it was supported by substantial evidence and was
not arbitrary or capricious. Outdoor Systems, as Lauve's successor in interest, then filed this
appeal.


DISCUSSION


 Outdoor Systems presents three issues for review. The company contends that: 
(1) TxDOT's final order is arbitrary and capricious because the agency relied on non-statutory
standards in finding that the signs had been removed; (2) substantial evidence cannot support a
finding of "removal" when sign repairs are found to be "normal maintenance" under the
regulations; and (3) the term "remove" as applied in this case is unconstitutionally vague. (4) 


Scope of Review

 Our review of an agency's decision is limited to the agency's final order and any
statements in reports that were adopted by the agency in its final order. See Public Util. Comm'n
v. AT&T Communications, 777 S.W.2d 363, 366 (Tex. 1989); Aetna Cas. & Sur. Co. v. State Bd.
of Ins., 898 S.W.2d 930, 935-36 (Tex. App.--Austin 1995, writ denied). A reviewing court may
not invade the fact finding role of the agency by making findings that an agency declines to make. 
See AT&T, 777 S.W.2d at 363. The parts of a PFD that an agency declines to adopt are not
binding on the agency and are not part of its final order. See State v. Public Util. Comm'n, 883
S.W.2d 190, 196 (Tex. 1994) (agency free to reject recommendations in PFD); see also Ross v.
Texas Catastrophe Prop. Ins., 770 S.W.2d 641, 642 (Tex. App.--Austin 1989, no writ) (hearing
examiner has no power to bind agency with PFD). TxDOT adopted only the ALJ's findings of
fact and conclusions of law, and our review is therefore limited to those elements. 

 Although Outdoor Systems raises three issues, in essence they all urge the same
argument--that Outdoor Systems "passed the normal maintenance test under § 21.142. Therefore
the signs could not have been 'removed' as a matter of law." (Citation omitted.) In making this
argument, Outdoor Systems relies on analysis that is contained in the PFD but that was not
adopted by TxDOT and that is therefore not properly before us. The order contains neither a
finding that the work done on the signs constituted "repairs" nor a conclusion that the work met
the criteria of "normal maintenance." (5)

Whether order is arbitrary and capricious 

 Outdoor Systems contends in its first issue that the agency applied non-statutory
standards in determining that the signs were removed. We disagree.

 Review under the "arbitrary and capricious" standard is limited and deferential. 
See Pedernales Elec. Coop. v. PUC, 809 S.W.2d 332, 338 (Tex. App.--Austin 1991, no writ). 
"The major factor that runs through arbitrary-capricious review cases is that parties must be able
to know what is expected of them in the administrative process." Starr Co. v. Starr Indus. Serv.
Inc., 584 S.W.2d 352, 356 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). To that end, an
agency decision may not be based on non-regulatory or non-statutory criteria. See id. at 356. To
avoid being arbitrary and capricious, an agency must articulate a rational connection between the
facts found and the agency's decision. See id. (citing Bowman Transp., Inc. v. Arkansas-Best
Freight Sys., Inc., 419 U.S. 281, 285 (1974)).

 Outdoor Systems does not take issue with how TxDOT's order defined "remove." 
Instead the company contends that the order does not apply the definition that it purports to adopt
because "the signs were found not to have been relocated or 'removed' in there [sic] entirety." 
Outdoor Systems again argues beyond the scope of this Court's review, for TxDOT's order
contains no finding regarding whether the signs were relocated. Further, even if the signs were
not relocated, the definition in the order states that "[t]o remove is to move by lifting, pushing
aside, or taking away or off, or to get rid of as though by moving." (Emphasis added.) 
Therefore, if the findings of fact indicate that the signs were "gotten rid of," TxDOT's conclusion
that the signs were "removed" follows the adopted definition and is not arbitrary and capricious.

 Uncontested finding of fact seven states that "[o]riginal signs 1 and 2 were
supported by six wooden creosote poles, had wooden stringers attached to wooden poles and X
brace; the new signs have none of these." (Emphasis added.) Finding of fact six recites that
"signs 1 and 2 were rebuilt with six steel poles, a channel upright to hold the stringers, double
steel stringers instead of wood and new angle support arms for the rear catwalk; this construction
was different from original signs 1 and 2." (Emphasis added.) By its use of the words "original"
and "new" TxDOT clearly indicates that it found the steel signs to be new and different signs
from the original wooden ones--leading to the inexorable conclusion that the "original" signs were
no longer there because they had been "gotten rid of," i.e., had been removed.

 Outdoor Systems argues that the "permits were cancelled [sic] because they were
deemed 'constructed differently' and 'upgraded'"; that the "manner of construction" findings
constitute an arbitrary and capricious application of extra-regulatory standards; and that these
findings do not "support the conclusion that the signs themselves were 'push[ed] aside,' 'tak[en]
away or off,' or '[gotten] rid of.'" We disagree. 

 Rather than applying extra-regulatory standards, the complained-of findings attempt
to illustrate the conclusion that the original signs were removed. Read in the context of the order
as a whole, the "manner of construction" language attempts to convey that although there are
currently signs at the location, they are not the "original" signs. Logic dictates that if the original
signs are no longer there, they must have been "taken away" or "gotten rid of." 

 Finally, Outdoor Systems argues that TxDOT's decision was arbitrary and
capricious because it resulted from public pressure by the anti-billboard group Scenic Galveston. 
See Starr Co., 584 S.W.2d at 356. In Starr, the record contained agency correspondence
admitting that the denial of an otherwise acceptable permit application was based on "adamant
local opposition." See id. The record before us indicates that Scenic Galveston prodded TxDOT
to investigate these signs, but it in no way indicates that the agency's ultimate decision to cancel
the permits was affected by outside pressure. Having rejected Outdoor Systems' arguments, we
overrule its first issue. 


Evidence of Removal

 In its second issue, Outdoor Systems argues that "[s]ubstantial evidence cannot
support the finding of 'removal' when the sign repairs were found to be 'normal maintenance'
under the regulations." Because TxDOT made no finding that the sign work qualified as "normal
maintenance," we limit our review to determining whether the record contains substantial
evidence that the signs were "removed." 

 In a substantial evidence review, we must first determine whether the evidence as
a whole is such that reasonable minds could have reached the conclusion the agency must have
reached in order to take the disputed action. See Texas State Bd. of Dental Exam'rs v. Sizemore,
759 S.W.2d 114, 116 (Tex. 1988). The test is not whether the agency made the correct
conclusion but whether some reasonable basis exists in the record for the agency's action. See
Texas Health Facilities v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). We
may not substitute our judgment for that of the agency and may consider only the record on which
the agency based its decision. See Sizemore, 759 S.W.2d at 116.

 The agency's findings, inferences, and conclusions are presumed to be supported
by substantial evidence, and the appealing party bears the burden of showing a lack of substantial
evidence. See Charter Medical-Dallas, Inc., 665 S.W.2d at 453. The appealing party cannot
meet this burden merely by showing that the evidence preponderates against the decision. See id.
at 452. If substantial evidence would support either affirmative or negative findings, the
reviewing court must uphold the order, resolving any conflicts in favor of the agency's decision. 
See id. at 453.

 Outdoor Systems does not contest the findings that the original signs were
constructed primarily of wood or that the new signs are constructed primarily of steel. Indeed,
Lauve's own employees testified to these facts. These findings indicate that the current signs are
not the original signs with necessary repairs but are instead new and different signs. The record
supports these findings. The fact that different signs occupy the locations of the original signs
leads to the inescapable conclusion that the original signs were "removed" by being "gotten rid
of." We overrule Outdoor Systems' second issue.


Whether agency decision renders removal standard unconstitutionally vague

 In its third issue, Outdoor Systems argues that the removal standard is
unconstitutionally vague because it "requires a subjective determination of what kind of repairs
qualify as 'removal.'" 

 A regulation violates the constitutional guarantee of due process if it requires the
doing of an act so vague that persons of common intelligence must guess at its meaning and differ
as to its application. See Texas Liquor Control Bd. v. The Attic Club, 457 S.W.2d 41, 45 (Tex.
1970); National Ass'n of Indep. Insurers v. Texas Dep't of Ins., 888 S.W.2d 198, 210 (Tex.
App.--Austin 1994), rev'd on other grounds, 925 S.W.2d 667 (Tex. 1996). The requirement that
a regulation be expressed with a reasonable degree of certainty does not preclude using ordinary
terms to convey commonly understood ideas. See City of Webster v. SignAd, Inc., 682 S.W.2d
644, 647 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.) (citing Sproles v. Binford, 286
U.S. 374, 393 (1932)).

 Outdoor Systems argues that the removal standard applied is vague because it
effectively equates "substantial repairs" with removal. See SignAd, 682 S.W.2d at 648. The
company's reliance on SignAd is misplaced. In SignAd, the challenged ordinance was held to be
vague because it prohibited repairing a sign if "substantial parts" of the sign were damaged by
an act of nature or removed under certain conditions. See id. at 646. Neither rule 21.150 nor the
definition of removal TxDOT adopted employs the word "substantial." (6)
 The order does not state
that the signs were "repaired," much less that the repairs were too "substantial."

 TxDOT adopted a common usage definition of "remove," and we have already held
that substantial evidence supports the conclusion that the original signs were "removed" as the
term was defined. Outdoor Systems does not contend that the adopted definition is vague. The
fact that some witnesses characterized the work done as "substantial" in order to convey that the
new signs are not the same as the old signs does not render the removal standard vague as applied
to this case. See id. at 647. We hold that the removal standard applied to Outdoor Systems was
not unconstitutionally vague and overrule appellant's final issue. 


CONCLUSION


 Having overruled all of appellant's issues on appeal, we affirm the district court
judgment. 



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith 

Affirmed

Filed: July 27, 2000

Do Not Publish
1. The cancellation of the third permit was reversed and is not at issue in this case.
2. Title 43 of the Texas Administrative Code has recently been amended. See 24 Tex. Reg. 
3733 (1999), effective May 23, 1999. Because these permits were canceled under former title 43,
all references are to that version, which can be found in the 1999 Texas Administrative Code. 


 For purposes of this case, rule 21.142 provides that "[w]hen a sign is being converted from
a multiple pole structure to a monopole structure or is being repaired at a cost in excess of 50%
of the cost of erecting a new sign of the same type at the same location, each such action
constitutes replacement rather than normal maintenance and a sign permit will be required if the
sign is an off-premises sign." 43 Tex. Admin Code § 21.142. 
3. The outdoor advertising rules define "Normal maintenance" as "[t]he process of keeping
a sign in good repair." Id. § 21.142.
4. In its pleadings in the trial court, Outdoor Systems' constitutional claim was subsumed by
its arbitrary and capricious argument.
5. Even if we reviewed the unadopted portions of the PFD, we would not be persuaded that
they support Outdoor Systems' premise. In explaining his decision, the ALJ unequivocally states
that "[t]he fate of the old signs fits a common understanding of the word 'remove' . . . but not
of repair" and that "the signs there now are not merely the original signs with necessary repairs." 
(Emphases added.) Outdoor Systems does not contest TxDOT's definition of repair as "to restore
by replacing a part or putting together what is torn or broken." Our review of the record
indicates that the evidence supports the ALJ's statements because the work done to the signs went
beyond replacing or putting back together the broken parts of the signs.


 The PFD does state that TxDOT staff failed to prove that the cost of the work done
exceeded fifty percent of the cost of erecting a new sign but also notes that "this recommended
finding is not determinative of whether the cancellation of the sign 1 and sign 2 permits should
be affirmed. Based on the above-stated finding that the signs were removed, the permit should
be cancelled [sic]." 
6. The amended rules now define "removed" as "The dismantling and removal of a substantial
portion of the parts and materials of a sign or sign structure from the view of the motoring
public." 24 Tex. Reg. 3733 (1999) (to be codified at 43 Tex. Admin. Code § 21.142 (24)). This
definition did not apply to Outdoor Systems, and we offer no opinion regarding its validity.




be
vague because it prohibited repairing a sign if "substantial parts" of the sign were damaged by
an act of nature or removed under certain conditions. See id. at 646. Neither rule 21.150 nor the
definition of removal TxDOT adopted employs the word "substantial." (6)
 The order does not state
that the signs were "repaired," much less that the repairs were too "substantial."

 TxDOT adopted a common usage definition of "remove," and we have already held
that substantial evidence supports the conclusion that the original signs were "removed" as the
term was defined. Outdoor Systems does not contend that the adopted definition is vague. The
fact that some witnesses characterized the work done as "substantial" in order to convey that the
new signs are not the same as the old signs does not render the removal standard vague as applied
to this case. See id. at 647. We hold that the removal standard applied to Outdoor Systems was
not unconstitutionally vague and overrule appellant's final issue. 


CONCLUSION


 Having overruled all of appellant's issues on appeal, we affirm the district court
judgment. 



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith 

Affirmed

Filed: July 27, 2000

Do Not Publish
1. The cancellation of the third permit was reversed and is not at issue in this case.
2. Title 43 of the Texas Administrative Code has recently been amended. See 24 Tex. Reg. 
3733 (1999), effective May 23, 1999. Because these permits were canceled under former title 43,
all references are to that version, which can be found in the 1999 Texas Administrative Code. 


 For purposes of this case, rule 21.142 provides that "[w]hen a sign is being converted from
a multiple pole structure to a monopole structure or is being repaired at a cost in excess of 50%
of the cost of erecting a new sign of the same type at the same location, each such action
constitutes replacement rather than normal maintenance and a sign permit will be required if the
sign is an off-premises sign." 43 Tex. Admin Code § 21.142. 
3. The outdoor advertising rules define "Normal maintenance" as "[t]he process of keeping
a sign in good repair." Id. § 21.142.
4. In its pleadings in the trial court, Outdoor Systems' constitutional claim was subsumed by
its arbitrary and capricious argument.
5. Even if we reviewed the unadopted portions of the PFD, we would not be persuaded that
they support Outdoor Systems' premise. In explaining his decision, the ALJ unequivocally states
that "[t]he fate of the old signs fits a common understanding of the word 'remove' . . . but not
of repair" and that "the signs there now are not merely the original signs with necessary repairs." 
(Emphases added.) Outdoor Systems does not contest TxDOT's definition of repair as "to restore
by replacing a part or putting together what is torn or broken." Our review of the record
indicates that the evidence supports the ALJ's statements because the work done to the signs went
beyond replacing or putting b